# GOVERNMENT OF THE VIRGIN ISLANDS, Appellee

v.

# BERNARD S. DuBOIS, Defendant/Appellant

Terr. Ct. Criminal No. 396/1988

Dist. Ct. Criminal No. 58/1989

District Court of the Virgin Islands

Appellate Division

August 15, 1990

GODFREY R. DE CASTRO, Attorney General, ROSALIE SIMMONDS BALLANTINE, Solicitor General, By JOSEPH F. ZUIKER, Assistant Attorney General (Department of Justice), St. Thomas, V.I., *for appellee Government of the Virgin Islands*

GEORGE W. CANNON, JR., ESQ., St. Croix, V.I., *for appellant DuBois*

BROTMAN, *Acting Chief Judge*

On Appeal from the
Territorial Court of the Virgin Islands

BEFORE: STANLEY S. BROTMAN, *Acting Chief Judge*, District Court of the Virgin Islands, Judge of the United States District Court for the District of New Jersey, Sitting By Designation, JOSEPH J. FARNAN, JR., *Judge* of the United States District Court for the District of Delaware, Sitting by Designation, and IVE A. SWAN, *Judge* of the Territorial Court of the United States Virgin Islands.

## OPINION OF THE COURT

Bernard S. DuBois was convicted by a jury of negligent homicide by means of a motor vehicle in violation of V.I. Code Ann. tit. 14, § 924 (2). He now appeals the conviction on the following grounds.

    1. The trial court erred in not granting appellant's motion for judgment of acquittal.

317

2. The evidence presented was insufficient to sustain the conviction.

3. The trial judge erred in permitting the jury to view the scene of the accident.

4. The trial court erred in not instructing the jury as to the standard of care of a pedestrian.

5. The trial court erred in permitting a police officer who was not an expert to offer expert testimony as to speed and stopping distance.

For the following reasons, the Court rejects appellant's assignments of error and affirms the judgment of the Territorial Court.

## I. FACTS AND PROCEDURE

On August 27, 1988, at approximately 8:40 p.m., Ernest McIlene left a bar where he had been drinking beer. He was stumbling and, although warned of an on-coming car by a friend, he started to traverse the street. DuBois, the driver of the on-coming car, had just come over a hill; the distance from the crest of the hill to the site of the accident was 306 feet, Appendix at 57, and there was nothing that would obstruct a driver's view. Appendix at 104. DuBois flashed his lights and sounded his horn. He then applied his brakes.

The posted speed limit was 35 miles an hour. There was testimony that DuBois had admitted to a police officer that traffic was traveling at 38 to 39 miles an hour, Appendix at 40–41, 89, although DuBois testified that he was driving only at 35 to 36 miles per hour. Appendix at 169. A police officer also testified that the skid marks indicated that the car driven by DuBois was travelling at a speed of 39 miles per hour. Appendix at 73, 89. The police officer also testified that the car driven by DuBois had tinted glass that interfered with complete visibility.[1] The car driven by DuBois struck McIlene, who died within hours of the collision.

An information was filed charging DuBois with two counts of operating a motor vehicle with disregard for the safety of others: by failing to maintain control of the vehicle in violation of V.I. Code Ann. tit. 20, § 504 (Count One), and by operating a vehicle with unsafely

---

[1] Although the bottom portion of the window was not tinted, when driving down an incline, the driver would have to lower his head to see through the untinted section of the window. If the driver made no adjustment to compensate for the incline, visibility would be impeded by the tinted glass.

tinted glass (Count Two) in violation of V.I. Code Ann. tit. 20, § 504. The Information also charged DuBois with negligent homicide, namely the killing of Ernest McIlene during the commission of an unlawful act, namely negligent driving, in violation of V.I. Code Ann. tit. 14, § 924(2). After a two day trial, a jury convicted DuBois of negligent homicide and involuntary manslaughter.

He now appeals and asserts there was no evidence of wrongdoing and claims there were various errors at trial.

## II. DISCUSSION

### 1. *Sufficiency of the Evidence:*

■ In reviewing the sufficiency of the evidence to support the convictions, the court is mindful of the limited standard of review articulated by the Supreme Court in Glasser v. United States, 315 U.S. 60 (1942):

> It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it.

Id. at 80 (citation omitted). Accord Burks v. United States, 437 U.S. 1, 17 (1978); United States v. Wexler, 838 F.2d 88, 90 (3d Cir. 1988); United States v. Leon, 739 U.S. 885, 890 (3d Cir. 1984); United States v. Riccobene, 709 F.2d 214, 222 (3d Cir. 1983). The court may not substitute its own judgment of the evidence for that of the jury, see United States v. Mariani, 725 F.2d 862, 865 (2d Cir. 1984); United States v. Cooper, 567 F.2d 252, 253 (3d Cir. 1977), and must draw all reasonable inferences that are favorable to the government. United States v. Ashfield, 735 F.2d 101, 106 (3d Cir.), cert. denied, 469 U.S. 858 (1984); Government of the Virgin Islands v. Williams, 739 F.2d 936, 940 (3d Cir. 1984). In short, the court must ascertain "whether, viewing the evidence in the light most favorable to the government, a reasonable mind could find the defendant guilty beyond a reasonable doubt of every element of the offense." United States v. Terselich, 885 F.2d 1094, 1097 (3d Cir. 1989) (citing Glasser, 315 U.S. at 80).

■ The trial court made no error in denying the motions for judgment of acquittal at the close of the government's case and at the close of the trial. The government had introduced evidence that showed that DuBois was travelling above the speed limit, saw two pedestrians in the center of the road, had the time to react, and chose

only to sound the horn and to flash his lights. Only at the last possible moment did he elect to apply his brakes. This evidence was sufficient to support an inference beyond a reasonable doubt that DuBois had the opportunity to avert the fatal accident and that, because of his failure properly to maintain control of his car, DuBois killed McIlene. V.I. Code Ann. tit. 14 § 924(2).

### 2. *Viewing the Scene of the Accident:*

■ "A decision regarding jury viewing is within the trial court's sound discretion and can be grounds for reversal only if that discretion is abused." United States v. Martinez, 763 F.2d 1297, 1305 (11th Cir. 1985) (citing United States v. Bryant, 563 F.2d 1227, 1230 (5th Cir. 1977), cert. denied, 435 U.S. 972 (1978)). Further, the modern trend in federal courts is to allow the defendant and counsel to be present. See In re Application to Take Testimony, 102 F.R.D. 521, 524 (E.D.N.Y. 1984). See generally 4 M. Rhodes Orfield's Criminal Procedure § 26:532 (2d ed. 1987).

In the instant case, the trial court did not abuse its discretion in allowing the jury to view the scene of the accident. During the trial, the trial judge suggested to counsel for both sides that the jury be permitted to view the scene of the accident to aid the jurors in visualizing the distance from the crest of the hill to the site of the impact. Counsel for both sides agreed to a procedure by which a stipulation as to the locations of the crest of the hill, the site of the accident, and the place where the vehicle came to rest would be presented to the jury. Appendix at 163–65. Appellant made no objection, and now claims error because the jury was not instructed that the visibility during the viewing in the middle of the day was not the same as the visibility on the night of the accident.

The trial judge imparted clearly to the jury that the purpose of the viewing was limited to aiding the jury in understanding where each of three critical events of the accident had occurred in relation to the others. Prior to leaving from the courthouse to see the scene of the accident, the trial judge gave the following instruction:

> Ladies and gentlemen, we are—I think it would be helpful to you if you took about 15 minutes to visit the scene of this accident. We are not very far away.
>
> Of course, I cannot tell you what your eyes should see. But I am interested in the lawyers pointing out to you three things

primarily. The crest of this hill, the point of impact with the deceased, and where the vehicle driven by Mr. DuBois came to rest.

The lawyers will proceed to the scene, agree on these points, and then I will have the marshal proceed with you and Mr. Mitchell, after an agreement, would point out these areas to you. I will take a short recess to allow you time to get some refreshments. And then, the marshals will take you to the scene.

Appendix at 193. Upon arriving at the scene of the accident, the court gave the following instruction:

From this point is the crest of the hill, from which the government takes its measurement, looking in that direction. All right.
(Walking down.)
(Stops.)
That's the bar across the street. Impact occurred in this general area and in this lane. That's about all the lawyers can agree upon. And behind you, of course, is the guardrail. Okay, back to the bus.

Thank you very much.

Appendix at 194.

■ Appellant did not raise any objection to the lighting at the time of the viewing, and was free to argue that the visibility on the night of the accident was not the same as on the day of the viewing; counsel for appellant elected not to do so. Moreover, this is the kind of change in circumstances that the jury would have realized; it is highly improbable that the omission of any instruction to the effect that the visibility on the day of the viewing would be different than the visibility on the night of the accident prejudiced appellant. There was no error in allowing the jury to visit the scene of the accident.

3. *The Duty of the Pedestrian:*

Appellant next claims that the trial court erred in failing to instruct the jury on the duty of care of a pedestrian. The basis for this instruction lies in the victim's apparent disregard for his own safety and the following exchange which occurred as defense counsel cross-examined Officer Woodrup:

Question: Officer Woodrup, you have said that you travel that road a lot and you would slow down when you pass by that area.
Answer: Hmm-n, hmm-n.

321

Question: Is it the law that requires people to slow down?

Or it is because of your own past background as a police officer and knowing that area, that you slow down?

Answer: Well, there is a law, and also from my own experience in that area, why I slowed down.

Question: You say there is a law that says you should slow down?

Answer: If a pedestrian is crossing the road in a regular manner.

Question: In a regular manner?

Answer: Yes; not a normal manner; and the vehicle travelling on the road, they should slow down, yield to that pedestrian.

Question: Are you a police officer for how many years?

Answer: Five years.

Question: You telling me and the ladies and gentlemen of the jury that there is a law if there is a person crossing the street in an irregular manner you should slow down?

Answer: You should slow down.

Question: Now, should you bump your horn, also?

Answer: Well, you could use any kind of device you have in your vehicle to alert the person. If the person keep coming, slow down and stop.

Question: Should you blink your light if it is night, sir?

Answer: Whatever means you have to alert the person. Eventually, you should stop if he keeps coming.

Question: Thank you. No further questions.

### REDIRECT EXAMINATION

Question: Officer Woodrup, what's the law you are referring to in answering Attorney Cannon's question that you should slow down if a pedestrian—

Answer: Well, there is the pedestrian right of way. There is a law that covers the pedestrian's right of way.

Question: And what is the law?

Answer: I can't remember it-word for word. But the law state that pedestrian has right of way on a crosswalk, an unmarked crosswalk and also if a pedestrian is crossing the road, where there is no crosswalk but he is crossing in a regular manner, and a vehicle see him, they should yield to that pedestrian.

Question: Now, is this a written law in a statute? Or is this case law?

Answer: If I remember correctly, I think there is case law on it. I don't know too much if it is a statute law; but I know there is case law on that portion where there is no kind of crosswalk.

Appendix at 90–92.

As is clear from this portion of the transcript, the opinion as to the state of the law was elicited in the first instance from defense counsel, who chose not to pursue it. Appellant cannot rely on an alleged error he created and to which he made no objection at trial.

■■ Although defense counsel initially sought an instruction on a pedestrian's duty to exercise care in crossing road, that request was withdrawn when defense counsel was unable to produce any Virgin Islands authority for that proposition. See Appendix at 209–11. Appellant has still not found any authority for the proposition that a pedestrian must exercise any degree of care in crossing a road. Accordingly, appellant has not shown that the trial court erred in refusing to give such an instruction. In the absence of any objection, the court's review is limited for review for plain error, which has been defined "as 'only 'particularly egregious errors' . . . that 'seriously affect the fairness, integrity or public reputation of judicial proceedings. . . .'"" Government of the Virgin Islands v. Forte, 806 F.2d 73, 76 (3d Cir. 1986) (quoting United States v. Young, 470 U.S. 1, 15 (1985)). Under this standard, there was no plain error in the trial court's failure to give such an instruction.

■ It appears that appellant is confusing the theories of comparative and contributory negligence, which would apply if this had been a civil case, with theories of criminal responsibility. The task for the jury was to determine whether appellant had committed the crime that was charged; whether the victim was himself partly to blame was not an issue for the trier of fact, except to the extent that his own conduct might show that appellant was not responsible for the death. Counsel was free to make the latter argument in his closing argument before the jury.

4. *Expert Testimony:*

■ Appellant finally asserts that the trial court erred in permitting Officer Woodrup to offer expert testimony after the court refused to accept him as an expert on the subject of vehicle accidents.

323

See Appendix at 31. Defense counsel's objection at trial, however, was somewhat limited:

> MR. MITCHELL: Your honor, at this time I will offer Officer Woodrup as an expert in accident investigation.

> MR. CANNON: Your Honor, I will object. I would have no problem with the officer relating to what the investigation showed. But to give Officer Woodrup expertise in vehicle accident I don't think the background is appropriate.

Appendix at 31. The testimony that followed was limited to the results of the investigation, an area to which defense counsel specifically did not object. Officer Woodrup testified about the actual length of skid marks left on the road by the car driven by DuBois. Appendix at 35. Although the trial court sustained objections to testimony in instances where there was not as of yet an adequate foundation, e.g. Appendix at 52–54 (as to drag factor test), 42–44 (as to visibility), the government did proceed to lay a foundation sufficient to permit the testimony. There was no error in allowing Officer Woodrup to testify as he did.

## CONCLUSION

For the foregoing reasons, the Court finds there was no error in the trial below, and the conviction will be affirmed.

An appropriate order will be entered.

## JUDGMENT OF THE COURT

This matter is before the court on the appeal of Bernard S. DuBois from the judgment of conviction of the Territorial Court of the United States Virgin Islands; and

After a careful review of the record and having considered the submissions of the parties and the arguments of counsel at the hearing held July 11, 1990; and

For the reasons set forth in the Court's opinion of this date;

IT IS on this 15th day of August, 1990

ORDERED that the judgment of the Territorial Court of the United States Virgin Islands is AFFIRMED.