**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff/Appellee**

**v.**

**RODNEY GREENIDGE, Defendant/Appellant**

**IN RE: RODNEY GREENIDGE**

D.C. Crim. App. No. 1996/045

T.C. Crim. No. 046/1996

District Court of the Virgin Islands

Division of St. Croix

June 30, 1998

MARK MILLIGAN, ESQ., St. Croix, V.I., *for Appellant*

MAUREEN PHELAN CORMIER, ESQ., Assistant Attorney General, St. Thomas, V.I., *for Appellee*

MOORE, *Chief Judge*, District Court of the Virgin Islands; BROTMAN, *Senior Judge of the United States District Court for the District of New Jersey,* Sitting by Designation; and MEYERS, *Territorial Court Judge, Division of St. Thomas and St. John,* Sitting by Designation.

**OPINION OF THE COURT**

PER CURIAM

These two appeals are brought by Rodney Greenidge ["Greenidge" or "appellant"] and arose out of the same set of facts. As such, they have been consolidated, and will be addressed in one opinion.

201

## ISSUES

The issues raised in Greenidge's challenge to his conviction and sentence are: 1) whether there was substantial evidence to support a conviction of murder in the second degree; 2) whether the trial judge correctly denied appellant's motions for judgment of acquittal and/or dismissal of all charges; 3) whether the trial court abused its discretion in qualifying Sergeant Gregory Bennerson to testify as an expert and whether his testimony exceeded the scope of his expertise; and 4) whether the sentencing judge erred in considering evidence that Greenidge possessed a firearm even though he had been acquitted of that charge.

In appellant's challenge to the issuance of the contempt citation, he raises the following issues: 1) whether the trial judge erred in granting the government's petition for use immunity[1] and in ruling that Greenidge had no Fifth Amendment right against self-incrimination; and 2) whether the trial court could modify the sentence Greenidge was serving in another case by interrupting appellant's serving of that sentence while he was incarcerated for contempt in this case.

## FACTS AND PROCEDURAL HISTORY

Shortly after noon on January 26, 1996, sixteen-year-old Ajamu Williams ["Wiliams"] was gunned down in broad daylight at the Ludvig Harrigan Court ["Harrigan Court"] in Frederiksted, St. Croix. He was pronounced dead on arrival at the Governor Juan Luis Hospital Medical Center at approximately 1:45 p.m. An autopsy performed by Dr. James Glenn later revealed that Mr. Williams had sustained several "relatively minor" shots, others that were not "instantly fatal-type wounds," some "grazing type bullet wounds," and "one fatal or life threatening wound" to the left side of the head. (Appellant's App. ["App."] at 41-44.) Based on

---

[1]Throughout appellant's Brief filed in the contempt matter, he mistakenly refers to the government's petition for "judicial immunity." The government's petition, however, specifically seeks "use immunity." The two cannot be confused: Judicial Immunity is the "absolute protection from civil liability arising out of the discharge of judicial functions which every judge enjoys." BLACK's LAW DICTIONARY 848 (6TH ed. 1990); Use Immunity "prohibits witness' compelled testimony and its fruits from being used in any manner in connection with criminal prosecution of the witness." *Id.* at 751.

eyewitness accounts, police arrested Greenidge, Kevin Simmons ["Simmons"], and Andy Peters ["Peters"].

While in custody, Greenidge gave two statements on January 26, 1996 — the same day as the incident. At first, Greenidge refused to answer any questions about the shooting, and he denied being at the scene or having any association with Simmons on that day. He admitted, however, that he had seen and spoken to Peters on at least two occasions earlier in the day. In his next statement, Greenidge admitted that on the morning of the shooting, both he and Peters were at his home in Estate Williams Delight when Simmons arrived and told them that "them man from Harrigan shoot up his house last night," and that he wanted them to go with him to "deal with them man." Appellant stated that Simmons telephoned an unidentified individual to arrange transportation to Harrigan Court. Once there, the unidentified driver waited in the car while Greenidge, Simmons and Peters walked down the sidewalk towards the bench where Williams was sitting with a friend, Ms. Nefertiti O'Bryan ["O'Bryan"].

Appellant did not contest that he knew Simmons had a gun in his hand, but asserted that he continued walking nevertheless. There was testimony that, as the men proceeded toward Williams, Greenidge made some sort of motion causing the others to pause momentarily. Greenidge argued that, based on O'Bryan's testimony, this pause was an "attempt to impede the progress of Simmons and Peters as well as coming to a stop, while Simmons and Peters proceeded toward Williams." The Government of the Virgin Islands ["government"] argued that appellant misstates O'Bryan's testimony about what happened on the sidewalk. Instead, the government contended that O'Bryan "stated only that the defendant stopped on the sidewalk 'like to tell them something,' but Simmons and Peters continued walking. The defendant followed behind them."

Ms. O'Bryan testified that when she saw Greenidge, Simmons, and Peters, she tapped Williams on his arm to alert him because she was aware that they did not get along. Upon seeing the three men, Williams immediately got up and started running toward a galvanized area. That instant, gunshots started coming from the direction of the three men, and O'Bryan ducked to avoid being

shot. Williams, having been shot several times, was crouched on the ground as the men retreated. Williams called out to O'Bryan asking if the men had left, but O'Bryan, noticing that Simmons was still within earshot, indicated that he should be quiet. Simmons heard Williams, returned to the area and shot him in the head.

Greenidge contended that he never possessed a gun or carried any ammunition during this incident; that he heard shots, started running toward the bushes, and later learned from Simmons that Williams was dead. The government contended at trial that appellant actively participated in Williams' murder in that he possessed a gun; he never tried to stop the criminal activity; and that he fired some of the shots which ultimately resulted in Williams' death.

Despite numerous objections from the defense at trial, Sergeant Gregory A. Bennerson ["Bennerson"], supervisor of the Virgin Islands Police Department's Forensic Identification section, was deemed qualified to testify as an expert witness. Bennerson first testified on direct examination that three guns were used in the shooting: a .380, 9mm, and a .45 caliber weapon. On cross-examination, Bennerson testified that no .380 casings had been collected at the scene or submitted to him for examination. In addition, no .380 weapons were presented for examination. Sgt. Bennerson later testified that "two separate weapons fired the projectiles."

At the close of the government's case, appellant's motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure was denied. The jury acquitted Greenidge of murder in the first degree and of unauthorized possession of a firearm during a crime of violence.[2] He was, however, convicted of

---

[2] The government is reminded that the commission or attempted commission of a crime of violence serves merely to enhance the penalty, but is not an element of the crime of unauthorized possession of a firearm defined in V.I. Code Ann. tit. 14, § 2253(a). *Rabess v. Government of the Virgin Islands*, 30 V.I. 348, 355-57, 868 F. Supp. 777 (D.V.I. App.Div. 1994). *See U.S. v. Bruney*, 30 V.I. 360, 367-68 nn.18 & 20, 866 F. Supp. 874 (D.V.I. 1994) (The clause "during the commission or attempted commission of a crime of violence" is not an element of the crime of unauthorized possession of a firearm defined in 14 V.I.C. § 2253(a).); *U. S. v. Sebastien*, Crim. No. 1992-111, V.I. BBS 92CR111.DT1 at 7 (D.V.I. Mar. 25, 1994) ("[S]ection 2253(a) prescribes a single offense of unauthorized possession of a firearm of which there are [only] two elements: one, that the defendant possessed

the lesser included offense of murder in the second degree and sentenced to twenty-five years in prison. Appellant's Rule 29 motion was again denied. This appeal of that conviction and sentence followed.

While Greenidge was in prison serving his twenty-five-year sentence, the other two individuals charged in this incident, Simmons and Peters, were brought to trial as co-defendants. On May 9, 1996, the government subpoenaed Greenidge to testify about his involvement in the incident. In a letter dated May 23, 1996, counsel for appellant informed the government that his client intended to invoke his Fifth Amendment right against self-incrimination. On June 25, 1996, the government petitioned the court for an order granting Greenidge "use immunity." Just three days later, on June 28, 1996, and before appellant responded, the trial court granted the motion giving Greenidge use immunity, and ordered that he give testimony in the case of *Government v. Peters & Simmons*, Terr. Ct. Crim. Nos. 41 & 42/1996 (St. Croix Div.). Appellant filed an opposition and invoked the Fifth Amendment right against self-incrimination. Greenidge refused to testify when called as a witness. As a result, Greenidge was held in contempt, and the court ordered that the "sentence imposed in Criminal No. 43 of 1996, the execution of said sentence, is hereby suspended and you are remanded to . . . custody . . . until you indicate to the Court that you are willing to testify in this case." (Appellant's Br. & App. (Contempt) ["Br. & App."] at 32.) Even though Greenidge never testified, Simmons and Peters were convicted. On March 14, 1997, the trial judge concluded that there was no longer a need for defendant's testimony and vacated the contempt order. An appeal of the underlying contempt order followed.

## DISCUSSION

### A. Jurisdiction & Standard of Review

This Court has appellate jurisdiction to review judgments and orders of the Territorial Court "in all criminal cases in which the

a firearm and two, that the defendant [possessed] it without authorization of law."); *see also U.S. v. Xavier*, 2 F.3d 1281, 1291 (3d Cir. 1993) (Section 2253(a) "provides punishment for unauthorized possession 'except that' a greater punishment applies for a defendant convicted of possessing a weapon during a crime of violence.").

defendant has been convicted, other than on a plea of guilty." V.I. CODE ANN. tit. 4, § 33. The applicable standards of review will be discussed in each section below.

## B. Sufficiency of Evidence to Sustain a Conviction of Murder in the Second Degree

■ The standard of review to determine whether the evidence was sufficient to sustain appellant's conviction of murder in the second degree is a question of law over which we exercise plenary review. *See generally Charleswell v. Government of the Virgin Islands*, 167 F.R.D. 674 (D.V.I. App. 1996); *Sanchez v. Government of the Virgin Islands*, 921 F. Supp. 297, 34 V.I. 105 (D.V.I. App. 1996); *Smalls v. Government of the Virgin Islands*, 1994 U.S. Dist. LEXIS 6286, 30 V.I. 82 (D.V.I. App. 1994). In reviewing the sufficiency of the evidence to support a conviction, the verdict of a jury must be sustained if, viewing the evidence in the light most favorable to the government, a reasonable mind could find the defendant guilty beyond a reasonable doubt of every element of the offense. *DuBois v. Government of the Virgin Islands*, 25 V.I. 316, 319 (D.V.I. App. 1990).

Under the laws of the Virgin Islands, murder "is the unlawful killing of a human being with malice aforethought." 14 V.I.C. § 921. A willful, deliberate, and premeditated killing is first degree murder, as is a murder committed in the perpetration of certain felonies. *Id.* § 922 (a). All other kinds of murder are murder in the second degree. *Id.* § 922(b). Malice aforethought is a

> characteristic mark of all murder . . . . It does not mean simply hatred or particular ill will, but extends to and embraces generally the state of mind with which one commits a wrongful act. . . . It . . . may also be inferred from circumstances which show a wanton and depraved spirit, a mind bent on evil mischief without regard to its consequences. It includes all those states of mind in which a homicide is committed without legal justification, extenuation or excuse.

*Government of the Virgin Islands v. Knight*, 26 V.I. 280, 764 F. Supp. 1042, 1049 (D.V.I. 1991), *aff'd*, 28 V.I. 249, 989 F.2d 619 (3d Cir. 1993).

■ Greenidge knew that he was going with Simmons and Peters to "deal with" people at Harrigan Court. Whatever "deal with" may imply, the evidence established that Greenidge continued walking with Simmons even though he saw a gun in Simmons' hand as they walked toward Williams, (App. at 130), and a few minutes later Williams was shot to death. Whether or not Greenidge had a gun with him,[3] he knew his companion had one and nevertheless went along with the plan to "deal with them man from Harrigan." Greenidge did not have to possess a gun for him to be found guilty as a principal. Virgin Islands law provides that

> (a) Whoever commits a crime or offense or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
> (b) Whoever willfully causes an act to be done which if directly performed by him or another person would be a crime or offense, is punishable as a principal.
> (c) Persons within this section shall be prosecuted and tried as principals, and no fact need be alleged in the information against them other than is required in the information against the principal.

14 V.I.C. § 11. The jury weighed the evidence and found that the evidence proved beyond a reasonable doubt that Greenidge was guilty of murder in the second degree. As a matter of law, and viewing the evidence in the light most favorable to the government, appellant's murder conviction must be affirmed.[4]

## C. Expert Testimony

■ We review the trial judge's rulings on the qualifications of

---

[3] The jury acquitted Greenidge of unauthorized possession of a firearm. Therefore, discussion of the government's failure to present FBI findings regarding the appellant's palm swab test is unnecessary.

[4] For the same reasons, and after examining the pre- and post-verdict motions for judgment of acquittal by the same standard as must be applied by the trial court, we find that appellant's Rule 29 motions were properly denied. That is, we have reviewed the evidence "in the light most favorable to the verdict" and determine that the evidence is sufficient to sustain the conviction. *See* FED. R. CRIM. P. 29(a). Absent local law to the contrary, all the federal rules of procedure and evidence apply in the Territorial Court of the Virgin Islands. TERR. CT. R. 7.

the government's expert witness, Sgt. Bennerson, and the admission of his testimony on microscopic examinations and comparisons of spent casings and fragments of projectiles for abuse of discretion. There is an abuse of discretion where there is a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of relevant factors." *V.I. Water & Power Auth. v. Virgin Islands Tel. Corp.*, 18 V.I. 451, 453 (D.V.I. 1981). Although the judge did not refer to the body of law on which he relied, whether local or federal, we must judge the court's rulings under the Uniform Rules of Evidence which have been enacted by the Virgin Islands Legislature.[5] The rules on expert and other opinion testimony are found at 5 V.I.C. §§ 911-16. To the extent that we find it necessary to determine the correctness of the trial court's interpretation of one of these statutory provisions, our standard of review is plenary.[6]

At trial, counsel for appellant objected to the government's tender of Sgt. Bennerson as "an expert in the field of ballistic and firearms examination," on grounds that there had been "insufficient foundation laid as to his expertise." (App. at 46-47.) At the outset, we note that a "judge may require that a witness before testifying in terms of opinion or inference be first examined concerning the data upon which the opinion or inference is founded." 5 V.I.C. § 912. Regarding the qualifications for an expert to be allowed to testify, we note that

> if the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (a) based on facts or

---

[5] The substantive rules of evidence enacted by the local legislature govern the trial of cases in the local courts of the Virgin Islands, and take precedence over the federal rules of evidence. See Revised Organic Act of 1954 § 21(c), 48 U.S.C. § 1611(c) ("The rules governing the practice and procedure of the courts established by local law . . . shall be governed by local law . . . ."). The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1994), reprinted in V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 73-177 (1995 & Supp. 1997) (preceding V.I. CODE ANN. tit. 1) ["REV. ORG. ACT" or "Revised Organic Act"].

[6] *Accord Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997) (While the trial court's admissibility rulings are reviewed for abuse of discretion, "to the extent that the court's ruling turns on an interpretation of a Federal Rule of Evidence the appropriate standard of review is plenary.").

data perceived by or personally known or made known to the witness at the hearing and (b) within the scope of the special knowledge, skill, experience or training possessed by the witness.

*Id.* 911(2). The trial judge conducted a preliminary examination and sustained Greenidge's objection that an insufficient foundation had been laid. After the government identified Bennerson's capabilities and established the depth and breadth of his education to qualify him to express an opinion, the court admitted the sergeant as an expert.

■ The record does not support Greenidge's contention that Sgt. Bennerson refused to discuss whatever specialized training he had received. Rather, Bennerson did provide sufficient additional information about his qualifications to support the trial judge's finding that he was qualified to testify. Given the judge's discretion in deciding whether to allow expert testimony, we find that the trial judge did not abuse his discretion in accepting Sgt. Bennerson as an expert. To be allowed to opine on a subject, the topic must be within the scope of the witness' special knowledge, skill, experience or training.[7]

■ Appellant further argues that even if Sgt. Bennerson was properly admitted as an expert, his testimony exceeded the scope of his expertise. Greenidge argues that Bennerson ultimately testified as an expert "in the field of microscopic examination and comparisons of spent casings and fragmented projectiles," an expertise for which the prosecution did not attempt to lay the necessary foundation. (Appellant's Br. at 26.) The record is to the contrary. In stating his qualifications, Bennerson testified that he was trained in "firearms examination of ballistics" at the Forensics Institute in Puerto Rico. (*Id.* at 46.) This expertise requires the skill to examine a firearm to "see if it's capable of firing ammunition, if

---

[7] *Accord Kannankeril,* 128 F.3d at 809 (The witness need not be "the best qualified," or "have the specialization that the court considers most appropriate") (quoting *Holbrook v. Lykes Bros. S.S. Co.,* 80 F.3d 777, 782 (3d Cir. 1996)). Thus, "if the expert meets liberal minimum qualifications, then the level of the expert's expertise goes to credibility and weight, not admissibility." *Kannankeril,* 128 F.3d at 809 (citing *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 741 (3d Cir. 1994)).

it's operable; its safety features and also microscopic examination of bullets and ammunition for comparison purposes; if it was fired from a weapon, if it's live ammunition, or if it was taken from a crime scene and fired from the same weapon." (*Id.* (Emphasis added.)) Given the nature of ballistics[8] and firearms examination, this Court finds that the factual basis upon which Sgt. Bennerson testified was within the scope of his expertise as established before the jury.

## D. Sentence

The standard of review applied to the sentence imposed by a trial court is abuse of discretion. *Government of the Virgin Islands v. Grant*, 1984 U.S. Dist. LEXIS 16265, 21 V.I. 20 (D.V.I. App. 1984).[9] A sentencing judge has wide latitude in the exercise of his sentencing function. *See Williams v. Oklahoma*, 358 U.S. 576, 585-86, 79 S. Ct. 421, 3 L. Ed. 2d 516 (1959) (Sentencing judge's consideration of defendant's murder of victim as an aggravating circumstance in determining proper sentence for kidnaping did not punish defendant a second time for same offense nor deny to him due process of law, even though he had already been convicted and separately sentenced for that murder.); *accord U.S. v. Watts*, 519 U.S. 148, 117 S. Ct. 633, 635, 136 L. Ed. 2d 554 (1997) (Before the Sentencing Guidelines, it was "well established that a sentencing judge may take into account facts introduced at trial relating to other charges, even ones of which the defendant has been acquitted." (Citation omitted).)

Section 923 delineates a mandatory minimum of five years as punishment for second degree murder, with no maximum: "Who-

---

[8] Ballistics is the "science of gun examination frequently used in criminal cases, especially cases of homicide, to determine the firing capacity of a weapon, its fireability, and whether a given bullet was fired from a particular gun." BLACK's LAW DICTIONARY 143 (6th ed. 1990).

[9] *Accord U.S. v. Del Piano*, 593 F.2d 539, 541 (3d Cir. 1979) (The general rule is that an "appellate tribunal will not review a judgment of sentence that is within the statutory maximum unless there be a showing of illegality or abuse of discretion.") (Adams, J., concurring) (quoting *U.S. v. Fessler*, 453 F.2d 953, 954 (3d Cir. 1972)). *Compare Chick v. Government of the Virgin Islands*, 941 F. Supp. 49, 51 (D.V.I. App.Div. 1996) (Absent colorable claim of constitutional or federal statutory violation, severity of sentence imposed on guilty plea is not reviewable under Virgin Islands law so long as it falls within the statutory limits.).

ever commits murder in the second degree shall be imprisoned for not less than five (5) years." 14 V.I.C. § 923. Greenidge has pointed to no illegality or abuse of discretion, nor does he suggest that the sentence of twenty-five years falls outside these statutory limits. Instead, he argues that the trial judge implicitly increased the severity of his sentence in violation of the Double Jeopardy clause by referring to the firearm charge of which Greenidge had been acquitted by the jury.

■ Although the trial judge did mention that the assailants armed themselves with a firearm before committing the murder,[10] the judge did not specifically state that Greenidge personally possessed a firearm. In essence, the judge found the evidence to be uncontradicted that Greenidge knowingly aided and abetted others who used a firearm in killing Williams. The trial court thus committed no error in sentencing Greenidge, since a sentencing judge can consider acquitted conduct which has been proved by a preponderance of the evidence. *Williams v. Oklahoma*, 358 U.S. at 585-86; *accord U.S. v. Watts*, 117 S. Ct. at 635.[11]

## E. Contempt of Court

■ The Territorial Court's finding of contempt is reviewed for abuse of discretion.[12] Factual findings in contempt proceedings are upheld unless clearly erroneous. 4 V.I.C. § 33. To the extent that

---

[10] During sentencing, the trial judge stated:

> I cannot help but recall the testimony in this case, and the jury must have concluded to support its verdict of guilty of Murder in the Second Degree, that the Defendant voluntarily joined himself with two others for a common purpose; that is to avenge the sniping that took place the evening before at the home of one of the codefendants. And they *armed themselves* and proceeded to the Harrigan community. And I say armed themselves because the evidence is uncontradicted.

(App. at 161 (emphasis added).)

[11] *Accord U.S. v. Pollard*, 986 F.2d 44, 46-47 (3d Cir. 1993) ("There is no statutory or constitutional requirement that a defendant be convicted of conduct before the conduct may be considered in sentencing. Indeed, the conduct need not even be shown beyond a reasonable doubt, but only by a preponderance" of the evidence.), *cert. denied*, 508 U.S. 956, 124 L. Ed. 2d 671, 113 S. Ct. 2457 (1993).

[12] *See Government of the Virgin Islands v. Santiago*, 35 V.I. 130, 937 F. Supp. 1157, 1166-67 (D.V.I. App.Div. 1996) (Moore, J., dissenting); *accord U.S. v. Winter*, 70 F.3d 655, 659 (1st Cir. 1995).

appellant's arguments raise pure questions of law, our review is plenary. *Magras v. Smith*, 940 F. Supp. 124, 127 (D.V.I. App. 1996).

The trial judge summarily held Greenidge in contempt for disobeying the court's direct order to testify under the grant of immunity, citing 14 V.I.C. § 581(3), remanded Greenidge to jail until he agreed to obey the order, and excluded any time spent in prison for the contempt from being credited toward appellant's twenty-five year sentence. (Br. & App. at 36-37.) Greenidge resumed service of his sentence as of March 14, 1997, after the Peters and Simmons trial was concluded and the contempt order was terminated. As a result, Greenidge did not receive credit against his sentence for the 161 days he was in jail for contempt.

Contempt provisions in the Virgin Islands are found in the Judiciary title of the Virgin Islands Code at 4 V.I.C. §§ 244, 281-82:

§ 244 Contempt of court

Any person who wilfully violates, neglects or refuses to observe or perform any lawful order of a court shall be guilty of contempt of court and upon being found guilty of such contempt may be punished as provided by law.

§ 281 Powers of judicial officers as to conduct of proceeding

Every judicial officer shall have power:

(1) To preserve and enforce order in his immediate presence and in the proceedings before him, when he is engaged in the performance of a duty imposed on him by law;

(2) To compel obedience to his lawful orders;

(3) To compel the attendance of persons to testify in a proceeding pending before him; and

(4) To administer oaths to persons in a proceeding pending before him, and in all other cases where it may be necessary in the exercise of his powers or the performances of his duties.

§ 282 Power to punish for contempt

For the effectual exercise of the powers conferred in the last section a judicial officer may punish for contempt in the cases and in the manner provided by law.

The Territorial Court is also authorized to punish for contempt under Title 14 of the Virgin Islands Code, Crimes, subsection (3) of which was recited in the Territorial Court's order here under review:

§ 581 Power of court to punish for contempt

Every court of the Virgin Islands shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other as —

(1) misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) misbehavior of any of its officers in their [*23] official transactions; or

(3) disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

14 V.I.C. § 581.[13]

■ The same act may constitute at the same time a civil and a criminal contempt.[14] This is the case here. Greenidge's violation of the court's order to testify subjected him to a civil contempt sanction designed to compel future compliance with the order, for which reason it is considered to be coercive and avoidable through obedience.[15] Appellant's refusal to testify also warranted a criminal contempt sanction for the "crime in the ordinary sense"[16] of disobeying a court order, punishable summarily in this case since it was committed in the court's presence.[17] Moreover, the appro-

---

[13] The mere fact that a defendant is found in contempt in a criminal proceeding does not mean that the contempt is criminal in nature. *See Santiago*, 937 F. Supp. at 1165 (Moore, J., dissenting); *see also Winter*, 70 F.3d at 660 (The "determination of whether a contempt order is civil or criminal is a question of law and the [trial] court's characterization of the sanction is not binding upon this court.")

[14] *See U.S. v. Yanagita*, 418 F. Supp. 214, 217 (E.D.N.Y. 1976), *rev'd on other grounds*, 552 F.2d 940 (2d Cir. 1977).

[15] *See International Union, UMWA v. Bagwell*, 512 U.S. 821, 826-27, 129 L. Ed. 2d 642, 114 S. Ct. 2552 (1994).

[16] *See id.*

[17] The rules of the Territorial Court provide for summary disposition of such "direct" contempts:

A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the

213

priate punishment for both contempts was incarceration. While portions of the contempt order were civil in nature, the trial judge summarily jailed Greenidge to vindicate the authority of the court as a criminal contempt pursuant to 14 V.I.C. § 581(3) for willful defiance in the judge's presence of the court's order to testify.[18]

## 1. Procedural Due Process on a Petition for Immunity

 Appellant alleges that he was never given notice and an opportunity to respond to the government's petition for immunity because the court granted said petition just three days after it was filed. We agree with the government that there is neither a statutory nor a due process requirement for notice and opportunity to respond before a petition for immunity is granted.

The Virgin Islands' immunity statute provides that, once the Attorney General of the Virgin Islands determines that an individual has information which may be necessary to the public interest and has refused to testify on the basis of his privilege against self-incrimination, the court, upon appropriate request, "**shall issue** . . . an order requiring such an individual to give testimony . . . which he refuses to give . . . on the basis of his privilege against self-incrimination . . . ." 14 V.I.C. § 20 (emphasis added).[19] Under the mandatory language of section 20, the Territorial

---

actual presence of the court, or in all instances of failure to obey a summons or subpoena of the court if properly served. The order of a contempt shall recite the facts and shall be signed by the judge and entered of record after the defendant is given an opportunity to be heard.

TERR. CT. R. 138.

[18] The court's order clearly states that "notwithstanding the court's admonition concerning the consequences of his continued refusal to obey this court's order, Rodney Greenidge indicated . . . personally under oath that he will not obey this court's lawful order." (Br. & App. at 36.)

[19] The local immunity statute, patterned closely after the federal provisions contained in 18 U.S.C. §§ 6002-03, is reproduced in full.

(a) Immunity generally
 Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to
—
 (1) a court of the United States,
 (2) a court of the Virgin Islands,
 (3) any other investigation pursuant to Title 4, chapter 35 of the Virgin Islands Code,

Court judge[20] has no discretion to deny a proper petition to immunize a witness. Accordingly, this Court holds that Greenidge had no right to prior notice or an opportunity to object before the judge ruled on the government's proper petition in this case.[21]

## 2. Fifth Amendment Right Against Self-Incrimination

Greenidge invoked the Fifth Amendment in refusing to take the stand at the trial of his co-defendants, and argued that, since he

---

and the person presiding over the proceeding communicates to the witness an order issued under this section, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

(b) Court and investigative proceedings

(1) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States, the United States Attorney or the Attorney General of the Virgin Islands, the district court for the judicial division in which the proceeding is or may be held shall issue, in accordance with paragraph (2) of this subsection, upon the request of the United States Attorney or the Attorney General of the United States, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in subsection (a) of this section.

(2) The United States Attorney or the Attorney General of the Virgin Islands or any designated Assistant Attorney General, any request an order under paragraph (1) of this subsection when in his judgment —

(i) the testimony or other information from such individual may be necessary to the public interest; and

(ii) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

14 V.I.C. § 20.

[20] Although 14 V.I.C. § 20(b)(1) lists only the District Court as having the authority to grant immunity, the Territorial Court was substituted by implication when original jurisdiction over all local criminal prosecutions was transferred from the District Court to the Territorial Court effective Jan. 1, 1994. Act Feb. 1, 1985, No. 5040, § 3(b), Sess. L. 1984, p. 464, as amended by Act March 1, 1985, No. 5045, § 1(b), Sess. L. 1985, p. 3; Act Oct. 14, 1986, No. 5206, § 107, Sess. L. 1986, p. 236, Act Sept. 30, 1993, No. 5890, §§ 1, 3, Sess. L. 1993, p. 214. *See Moravian Sch. Advisory Bd. v. Rawlins*, 33 V.I. 280, 70 F.3d 270, 274 (3d Cir. 1995) (District Court's jurisdiction over local actions eliminated even when not deleted from particular statute.).

[21] *See also In re Grand Jury Investigation*, 486 F.2d 1013, 1016 (3d Cir 1973) (Court's duty in granting a petition for immunity is "largely ministerial, [and] when the order is properly requested the judge has no discretion to deny it.").

had already been convicted of murder in the second degree and sentenced to twenty-five years imprisonment, immunity was of no use to him at that point. He also suggested that the government might use his immunized testimony against him later, if we were to reverse his conviction here.

Section 20 clearly provides that

> no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

14 V.I.C. § 20(a). The statute, therefore, would have prevented the government from using Greenidge's immunized testimony against him unless he lied during his testimony. This is no less than the protection afforded by the Fifth Amendment. *See The Pillsbury Co. v. Conboy*, 459 U.S. 248, 254-55, 74 L. Ed. 2d 430, 103 S. Ct. 608 (1983) ("The power to compel testimony is limited by the Fifth Amendment, and . . . any grant of immunity must be coextensive with the privilege."); *see also U.S. v. Apfelbaum*, 445 U.S. 115, 123, 126, 63 L. Ed. 2d 250, 100 S. Ct. 948 (1980) (While use immunity must be confined to the scope required by the Fifth Amendment, "perjury prosecutions are permissible for false answers to questions following the grant of immunity."). We accordingly hold that the Virgin Islands immunity statute affords protection commensurate with the Fifth Amendment.

### 3. Suspension of Sentence Imposed on Conviction

Appellant argues that the court had no jurisdiction to interrupt the serving of his sentence once he filed a notice of appeal of his conviction and twenty-five-year sentence in Crim. No. 043/1996. We hold that the trial court had jurisdiction to apply any time Greenidge was incarcerated under its contempt order to the coercive purpose of the contempt sanction, and to deny credit to

his twenty-five year sentence for any time served in prison under the contempt order.[22]

## CONCLUSION

■ For the above-stated reasons, this Court will affirm Greenidge's conviction and sentence, and also will affirm the trial judge's finding of contempt. Specifically, we find that: 1) there was sufficient evidence to sustain a conviction of murder in the second degree and appellant's Rule 29 motions were properly denied; 2) the court did not abuse its discretion in admitting Sgt. Bennerson as an expert; 3) the trial judge did not abuse his discretion in sentencing Greenidge to twenty-five years in prison; 4) appellant's due process rights were not violated when the court granted the government's petition for immunity before Greenidge could respond, and use immunity adequately protected his Fifth Amendment right against self-incrimination; and 5) the trial judge properly interrupted the service of Greenidge's prior criminal conviction while he was incarcerated for contempt.

DATED this 30th day of June, 1998.

---

[22] *See, e.g., In re Grand Jury Investigation*, 865 F.2d 578, 581 (3d Cir. 1989) (Not to toll service of a sentence upon an earlier conviction would remove the coercive effect of the contempt sanction.).