**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**FELIX JOSEPH, Defendant**

Criminal No. F291/2000

Territorial Court for the Virgin Islands

Division of St. Thomas and St. John

September 5, 2002

17

DOUGLAS DICK, ESQ., Virgin Islands Department of Justice, St. Thomas, Virgin Islands, *Attorney for Plaintiff.*

DAVID J. COMEAUX, ESQ., Ogletree, Deakins, Nash, Smoak & Stewart, LLC, St. Thomas, Virgin Islands, *Attorney for Defendant.*

HODGE, *Judge*

## MEMORANDUM OPINION

(September 5, 2002)

Before the Court is Defendant's "Motion for Judgment of Acquittal or, in the Alternative, for a New Trial," pursuant to Rule 29 of the Federal Rules of Criminal Procedure[1] and Rule 135 of the Rules Governing the Territorial Court of the Virgin Islands. Defendant's motion raises several issues and highlights an ongoing debate regarding the interplay in the Territorial Court between the Federal Rules of Evidence and the Uniform Rules of Evidence, as adopted by the Virgin Islands Legislature. For the reasons set forth herein, Defendant's motion shall be denied.

## FACTS

Defendant Felix Joseph ("Joseph") was charged by information with one count of unlawful sexual contact, in violation of V.I. CODE ANN. tit.

---

[1] Made applicable to this Court through Rule 7 of the Rules Governing the Territorial Court of the Virgin Islands.

18

14, § 1708(2).[2] This charge stemmed from an encounter between Joseph and a minor, "M.E."[3] On January 9, 2002, a jury found Joseph guilty as charged in the amended information,[4] and Joseph was sentenced to seven years' imprisonment.[5]

## DISCUSSION

The Rules Governing the Territorial Court of the Virgin Islands provide that a court may grant a new trial "if required in the interest of justice."[6] The Federal Rules of Criminal Procedure provide that "the court ... shall order the entry of judgment of acquittal of one or more offenses charged in the ... information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense."[7] A "judgment of acquittal must be granted when, viewing the evidence in the light most favorable to the Government, the Court determines as a matter of law that a reasonable jury could not find the defendant guilty beyond a reasonable doubt."[8]

### 1. The Government's Closing Argument.

Joseph claims that, in its closing argument, the government improperly drew attention to his failure to testify at trial by stating that (1) there were only two people who really knew what happened, thereby emphasizing Joseph's failure to testify in his own defense, and (2) Joseph and M.E. had received preparation for trial by counsel, thereby highlighting the fact that M.E. testified while Joseph did not.[9] The government responded that its statements were innocuous and, in any event, served only to counteract Joseph's suggestions that (1) the accusations against him were those of a disturbed child, and (2) the

---

[2] Am. Information of Jan. 7, 2002.

[3] The name of the minor child is omitted in order to protect her identity.

[4] R. of Proceedings of Jan. 9, 2002.

[5] J. & Commitment of May 2, 2002.

[6] TERR. CT. R. 135.

[7] FED. R. CRIM. P. 29(a).

[8] *Walters v. Gov't*, 36 V.I. 101, 110, 172 F.R.D. 165, 171 (D.V.I. App. Div.) (editing in original) (internal citation omitted), *aff'd*, 135 F.3d 764 (3d Cir. 1997).

[9] Def.'s Mem. in Supp. of Mot. for J. of Acquittal or New Trial at 1-2.

government and the Family Resource Center, a private victims-advocacy group, had encouraged M.E. to falsely accuse Joseph.[10] The government further stressed that (1) its statements did not infect the trial with unfairness so as to deprive Joseph of due process, and (2) the Court's instructions to the jury cured any improper statements.[11]

 With respect to whether the statements of a prosecutor violated a defendant's due process rights, a court must examine whether the challenged statements, taken in the context of the trial as a whole, were sufficiently prejudicial so as to deprive the defendant of a fair trial.[12] Examined in this light, it is clear that the government's statement that only two people knew what really happened did not undermine Joseph's right to a fair trial. During both opening and closing arguments, the government admitted candidly that, because sexual assaults on minors are generally private crimes that involve only the perpetrator and the victim, it could not present "an iron-clad" or "open and shut" case.[13] Taken in the context of the trial as a whole, it becomes evident that the statement in question was merely an extension of this unobjectionable line of reasoning. Likewise, Joseph's argument that the government impermissibly drew attention to his decision not to testify by remarking on his and M.E.'s trial preparation lacks merit. Even the most unforgiving reading of the government's statement reveals no suggestion that the jury should have been swayed by M.E.'s presence on the stand and Joseph's lack thereof. In sum, because the government's statements did not deprive Joseph of his right to a fair trial, his prosecutorial misconduct claim must be discounted.

## 2. Failure of the Government to Produce *Brady* Material

Joseph argues that a police statement made by his daughter, in which she denies that she ever saw the defendant enter M.E.'s bedroom, was exculpatory evidence that should have been turned over to the defense under the tenets of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.

---

[10] Gov't's Resp. to Def.'s Mot. for New Trial at 3-4.

[11] *Id.* at 3-4.

[12] *Werts v. Vaughn*, 228 F.3d 178, 197-98 (3d Cir. 2000) (citing *Greer v. Miller*, 483 U.S. 756, 765, 107 S. Ct. 3102, 3109, 97 L. Ed. 2d 618 (1987)); *Plaskett v. Gov't of the V.I.*, 147 F. Supp. 2d 367, 376 (D.V.I. App. Div. 2001).

[13] *See* tr. excerpt at 15-16.

Ed. 2d 215 (1963).[14] Joseph argues that, in addition to the government's *de facto* failure to comply with its legal obligation to turn over such material, the defense was prejudiced because it was unable to prepare for a sufficiently rigorous cross-examination of Joseph's daughter.[15]

The government replies that, although it inadvertently may have failed to turn over the daughter's police statement to the defense, Joseph was not prejudiced because there was no reasonable probability that, had the evidence been disclosed, the outcome of the trial would have been different.[16] The government notes that the defense knew of the girl's existence as a witness and knew from the victim's statement that the witness was present in the house around the time of the offense.[17] The government also notes that the defense failed to request a mistrial or a continuance, thereby acknowledging that the evidence did not unduly undermine defense counsel's plans for direct or redirect examination.[18]

█ The Supreme Court has summarized the government's obligation to turn over exculpatory *Brady* material as follows:

> It is well settled that the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment. Although courts have used different terminologies to define "materiality," a majority of this Court has agreed, "[e]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."[19]

Under this standard, nothing suggests that, had the defense received the daughter's police statement in advance of trial, the outcome of the trial would have been different. Although Joseph alleges that the availability

---

[14] Def.'s Mem. in Supp. of Mot. for J. of Acquittal or New Trial at 2-3.

[15] *Id.* at 3-4.

[16] Gov't's Resp. to Def.'s Mot. for New Trial at 5-6.

[17] *Id.* at 5.

[18] *Id.* at 6-7.

[19] *Pennsylvania v. Ritchie*, 480 U.S. 39, 57, 107 S. Ct. 989, 1001, 94 L. Ed. 2d 40 (1987) (citations omitted) (editing in original).

21

of the statement would have allowed defense counsel to refine its direct and redirect examination of Joseph's daughter, Joseph does not identify any specific information that the defense was unable to elicit from the witness. Furthermore, as the government notes, the defense knew of this witness' existence. Thus, her testimony would not have come as a surprise to defense counsel. Therefore, because Joseph has failed to demonstrate how the outcome of the trial would have been different had he received the police statement of a defense witness in a timely manner, his claim must be rejected.

## 3. Admission of Hearsay Statements

Joseph contends that this Court erred in admitting the testimony of the emergency room physician who treated M.E.[20] Joseph argues that the government was improperly allowed to admit both the assertions made by M.E. to the doctor and a notation in the doctor's medical report where M.E. stated that she was "touched" by the defendant.[21] Joseph claims that the M.E.'s statements did not describe her medical history, symptoms, pain, or sensations made for the purpose of diagnosis or treatment, as required by FED. R. EVID. 803(4).[22] Joseph further argues that, even if the statements qualified as an account of medical history, symptoms, pain, or sensations, they remained inadmissible because they were not pertinent to any diagnosis or treatment that was provided by the doctor.[23] The government responds that the identity of a possible child molester is a necessary component of a victim's medical history in order to put the proper safeguards in place for the child.[24]

### a. Admissibility of Evidence in the Territorial Court of the Virgin Islands

The prominence of the Federal Rules of Evidence ("Federal Rules") in this issue implicates a tangential, but important, matter. The Rules Governing the Territorial Court of the Virgin Islands ("Territorial Court

---

[20] Def.'s Mem. in Supp. of Mot. for J. of Acquittal or New Trial at 4.

[21] *Id.*

[22] *Id.* at 5.

[23] *Id.*

[24] Gov't's Resp. to Def.'s Mot. for New Trial at 7-8.

Rules") provide that, to the extent that they are not inconsistent with the Territorial Court Rules, the Federal Rules shall apply to practice and procedure in the Territorial Court.[25] However, under the Revised Organic Act of 1954, "the rules governing the practice and procedure of the courts established by local law ... shall be governed by local law or the rules promulgated by those courts."[26] The Virgin Islands Legislature has adopted the Uniform Rules of Evidence ("Uniform Rules") as the official evidentiary code for the Virgin Islands, and thereby, applicable to the Territorial Court.[27] Thus, where the Federal Rules diverge from the Uniform Rules, this Court is obligated to follow the Uniform Rules as codified.[28]

Regrettably, the courts of the Virgin Islands have not spoken with one voice on this issue. Less than two years after the Appellate Division of the District Court of the Virgin Islands recognized the primacy Uniform Rules in Territorial Court proceedings, that court issued another *per curiam* opinion taking the opposite view.[29] The Appellate Division has neither revisited this matter nor expressly overruled its earlier position in *Greenidge*.

Despite this confusion, an examination of *Sampson* and its underlying authority makes it demonstrably clear that the Uniform Rules still hold sway over both civil and criminal proceedings in the Territorial Court where the Federal Rules are inconsistent with local rules. First, the evidentiary issue presented in *Sampson* centered on the competency of a

---

[25] TERR. CT. R. 7 & 12.

[26] Revised Organic Act of 1954, § 21(c), 48 U.S.C. 1611(c), *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 150 (1995) (preceding V.I. CODE ANN. tit. 1).

[27] *See* 5 V.I.C. §§ 771-956, at 260.

[28] *See Gov't v. Greenidge*, 41 V.I. 200, 208 n.5 (D.V.I. App. Div. 1998) (*per curiam*) ("The substantive rules of evidence enacted by the local legislature govern the trial of cases in the local courts of the Virgin Islands, and take precedence over the federal rules of evidence.").

[29] *See Gov't v. Sampson*, 42 V.I. 247, 261 n.8, 94 F. Supp. 2d 639, 648 (D.V.I. App. Div. 2000) (*per curiam*) (citing 5 V.I.C. §§ 771-956, at 261 (Criminal Actions) for the proposition that "the Uniform Rules of Evidence contained in this chapter do not apply in criminal actions").

witness to testify as an expert.[30] Therefore, at most, *Sampson* should be read only as delineating the qualifications of expert witnesses.

Second—and more importantly—the *Sampson* court, in forming its holding, relied exclusively on the editorial commentary to the Uniform Rules that appears in the Virgin Islands Code.[31] The commentary refers to FED. R. CRIM. P. 54, which directs that all Article III courts and congressionally-created courts in United States territories, including the District Court of the Virgin Islands, must use the Federal Rules of Criminal Procedure in their criminal proceedings.[32] The commentary then notes that FED. R. CRIM. P. 26 mandates that courts using the Federal Rules of Criminal Procedure are obligated to use the Federal Rules of Evidence as well.[33] The commentary thus concludes that the Uniform Rules cannot apply in criminal matters in the Virgin Islands.

In stating, however, that Rule 26 is applicable to the Virgin Islands, the commentary misreads the preclusive effect of Rule 54 on this Court. Although Rule 54 directly alludes to the District Court of the Virgin Islands, it does not mention the Territorial Court of the Virgin Islands or any other local court.[34] The Territorial Court, therefore, is not subject to the directive of Rule 26, which mandates the use of the Federal Rules. Put another way, although the District Court of the Virgin Islands must rely upon the Federal Rules to resolve its evidentiary quandaries, no such

---

[30] *See Sampson*, 42 V.I. at 261-62, 94 F. Supp. 2d at 648-49.

[31] *See* 42 V.I. at 261 n.8, 94 F. Supp. 2d at 648; 5 V.I.C. §§ 771-956, at 260-263.

[32] *See* 5 V.I.C. §§ 771-956, at 261; FED. R. CRIM P. 54 ("These rules apply to all criminal proceedings in the United States District Courts; in the District Court of Guam; in the District Court for the Northern Mariana Islands ... and in the *District Court of the Virgin Islands*; in the United States Courts of Appeals; and in the Supreme Court of the United States[.]") (emphasis added).

[33] *See* 5 V.I.C. §§ 771-956, at 261. The commentary quotes a portion of FED. R. CRIM. P. 26 that has since been amended. *See id.* ("The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provided, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."). The current language of the rule, however, conveys the same sentiment. *See* FED. R. CRIM. P. 26 ("In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by an Act of Congress or by these rules, the Federal Rules of Evidence, or other rules adopted by the Supreme Court.").

[34] *See* FED. R. CRIM. P. 54.

compulsion prevents the Territorial Court of the Virgin Islands from relying upon the evidentiary code that was adopted by the Legislature.

■ When originally made, the editor's comment that the Uniform Rules do not apply to criminal actions in the Virgin Islands was technically correct as, at that time, all criminal cases were tried in the District Court.[35] Because the Federal Rules were applicable in the District Court, the Uniform Rules that were adopted by the Legislature were never applicable to criminal cases in the Virgin Islands at that time. In 1984, however, Congress amended the Revised Organic Act of 1954 to allow for the expansion of the Territorial Court's jurisdiction.[36] The 1984 amendments also bestowed concurrent jurisdiction upon the District Court and the Territorial Court regarding criminal offenses,[37] whereby the District Court retains only limited supplemental jurisdiction "over those territorial criminal offenses that grow out of conduct that also offends federal criminal law."[38] In 1993, the Legislature further scaled back the overlap between the courts by granting the Territorial Court original jurisdiction in all criminal actions, subject to the concurrent jurisdiction provisions of the 1984 amendments.[39] It is evident, therefore, that, although the relationship between the Territorial

---

[35] *See Carty v. Beech Aircraft Corp.*, 679 F.2d 1051, 1055 (3d Cir. 1982) (discussing the jurisdictional provisions for the District Court of the Virgin Islands as set forth in the Organic Act of 1936, §§ 25, 27-28, 48 U.S.C. §§ 1405x, 1405z-1406, *repealed*, Pub. L. 97-357, tit. III, § 307, 96 Stat. 1709 (1982)), *superceded by statute as noted in Club Comanche, Inc. v. Gov't of the V.I.*, 278 F.3d 250, 255-56 (3d Cir. 2002). *See also Gov't v. Colbourne*, 31 V.I. 22, 23-24 (Terr. Ct. St. T. & St. J. 1994) (documenting the transfer of criminal jurisdiction from the District Court to the Territorial Court).

[36] *Parrott v. Gov't*, 43 V.I. 277, 281-82, 230 F.3d 615, 619 (3d Cir. 2000).

[37] Revised Organic Act of 1954, § 22(c), 48 U.S.C. § 1612, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 152-53 (1995) (preceding V.I. CODE ANN. tit. 1) ("The District Court of the Virgin Islands shall have concurrent jurisdiction with the courts of the Virgin Islands established by local law over those offenses against the criminal laws of the Virgin Islands, whether felonies or misdemeanors or both, which are of the same or similar character or part of, or based on, the same act or transaction or two or more acts or transactions connected together or constituting part of a common scheme or plan[.]").

[38] *United States v. Williams*, 41 V.I. 394, 396 (D.V.I. 1999).

[39] 4 V.I.C. § 76(b)(1) & (c) (1997 & Supp. 2002).

Court and the District Court does not mirror exactly the relationship between a state court and a federal court,[40] both courts have evolved over time into separate judicial entities. Accordingly, it is appropriate that this Court abide by the provisions of local law, duly enacted by our Legislature, in matters of the admissibility of evidence where local law differs from the Federal Rules of Evidence.[41]

### b. Statements of Physical or Mental Condition under the Uniform Rules

■ The Virgin Islands evidentiary code contains a provision entitled "statements of physical or mental condition of declarant"[42] that incorporates much of the language of FED. R. EVID. 803(4). However, § 932(12) does not recognize statements made for the purposes of "medical history" to be an exception to the hearsay rule.[43] Because, as noted, this Court must follow the language of § 932(12) where it diverges from the Federal Rules of Evidence, M.E.'s statements to the

---

[40] *Parrott*, 43 V.I. at 284, 230 F.3d at 621.

[41] It is worth noting that the Legislature historically has used various uniform acts as models for its own statutes. For a partial list, see, *e.g.*, 5 V.I.C. § 3801 (Uniform Criminal Extradition Act); 5 V.I.C. §§ 4901-43 (Uniform Interstate and International Procedure Act); 6 V.I.C. §§ 21-26 (Uniform Aircraft Financial Responsibility Act); 11A V.I.C. § 1-101 (Uniform Commercial Code); 15 V.I.C. §§ 1091-1111 (Uniform Trusts Act); 15 V.I.C. §§ 1141-1220 (Uniform Trustees' Accounting Act); 16 V.I.C. §§ 391-429 (Uniform Reciprocal Enforcement of Support Act); 26 V.I.C. §§ 1-135 (Uniform Partnership Act); 26 V.I.C. §§ 201-28 (Uniform Limited Partnership Act); 29 V.I.C. § 683 (Uniform Unclaimed Property Act); and many others. Currently, the Virgin Islands' evidentiary code is based upon the 1953 draft of the Uniform Rules of Evidence. 5 V.I.C. §§ 771-956, at 260, note (1997) (Editor's Note). The National Conference of Commissioners on Uniform State Laws reviews and revises the uniform acts it promulgates in order that they keep pace with new developments in the law. In the interest of updating the Territory's evidentiary rules, the Legislature may wish to consider and enact elements of the Uniform Rules that track desirable provisions of the Federal Rules.

[42] 5 V.I.C. § 932(12).

[43] *Compare* FED. R. EVID. 803(4) (concerning "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment") with 5 V.I.C. § 932(12) (regarding statements of "previous symptoms, pain or physical sensation, made to a physician consulted for treatment or for diagnosis with a view to treatment, and relevant to an issue of declarant's bodily condition").

emergency room physician, if characterized solely as statements pertaining to her medical history, were improperly admitted.[44]

██ Nevertheless, as a practical matter, this Court can discern no principled distinction between a patient's medical history and statements of "previous symptoms, pain or physical sensation." Furthermore, the Appellate Division has made it clear that information that is gathered routinely by physicians in child sexual-abuse cases and relied upon for the purposes of treatment and diagnosis is admissible under Rule 803(4).[45] This Court has no difficulty in concluding that a child's identification of her molester, if not pertinent to her medical history, certainly qualifies as a statement necessarily pertaining to the child's symptoms, sensations, and treatment for sexual assault. Thus, the testimony and report of the emergency room physician were properly admitted into evidence under the "statements for the purpose of medical diagnosis or treatment" exception to the hearsay rule.

## 4. Failure to Strike Jurors for Cause

Joseph argues that this Court erred in refusing to strike for cause two venirepersons, M. Henderson and N. Gumbs, who were allegedly biased against Joseph.[46] Joseph contends that this forced defense counsel to exercise two peremptory challenges, which ultimately prevented two allegedly favorable alternate jurors from being seated as jurors.[47] Joseph asserts that both Henderson and Gumbs had varying degrees of involvement with the Family Resource Center, which is, as noted above, an organization that counsels victims of domestic abuse and assists the government in preparing these victims for trial.[48] Joseph further alleges

---

[44] In support of this Court's earlier point concerning the adoption of the most recent Uniform Rules of Evidence, *see supra* note 7, the 1999 Final Draft of the Uniform Rules of Evidence recognizes that a statement of medical history may qualify as a hearsay exception. UNIF. R. EVID. 803(3) ("Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.") (available at http://www.law.upenn.edu/bll/ulc/ure/evid1200.htm).

[45] *Gov't v. Morris*, 42 V.I. 135, 138-40, 191 F.R.D. 82, 85-86 (D.V.I. App. Div. 1999).

[46] Def.'s Mem. in Supp. of Mot. for J. of Acquittal or New Trial at 6.

[47] *Id.*

[48] *Id.* at 6-7.

that Henderson had been the victim of a crime and had misrepresented her ability to be unbiased so she could remain on the jury panel.[49] Joseph also notes that Gumbs had received counseling at the Family Resource Center and knew one of the defense witnesses from her involvement there.[50]

The government replies that the vernirepersons' involvement with the Family Resource Center was not as profound as Joseph suggests and, in any event, should not exclude them automatically from serving on a jury.[51] The government also contends that the Court addressed any concerns about inferred bias by expanding its *voir dire* to ascertain whether the prospective jurors believed that they could be objective.[52] Finally, the government dismisses as speculative any suggestion that the alternate jurors, without having taken part in the jury's deliberations, would have voted in a particular way.[53]

 As a general matter, the removal for cause of vernirepersons occurs only upon the discovery of "a narrowly specified, provable, and legally cognizable basis of partiality, such as personal relationship with a party, witness, or attorney in litigation, or a biased state of mind concerning a party or issue in case."[54] In this case, the prospective jurors stated that, in spite of their experiences and backgrounds, they believed that they could render an impartial verdict. In the absence of any evidence to suggest that either of the prospective jurors falsely affirmed their impartiality,[55] they must be taken at their word. Thus, this Court is satisfied that it did not abuse its discretion in refusing to dismiss for cause Henderson and Gumbs.

---

[49] *Id.* at 7.

[50] *Id.*

[51] Gov't's Resp. to Def.'s Mot. for New Trial at 8-9.

[52] *Id.* at 9.

[53] *Id.* at 10.

[54] *United States v. Annigoni*, 96 F.3d 1132, 1138 (9th Cir. 1996) (internal citations and quotation marks omitted).

[55] *See, e.g., United States v. Breen*, 243 F.3d 591, 598 (2d Cir. 2001).

## 5. Denial of Jury Instruction Concerning the Testimony of Children

Joseph contends that this Court erred in failing to allow a jury instruction stating that the testimony of a witness should not be given more weight simply because the witness is a child.[56] Joseph argues that the testimony of M.E. was so inherently unreliable that the jury must have afforded her special attention because she was a child.[57] The government replies that child witnesses are assumed to be as competent to testify as adults, and that there is no evidence that the jury believed M.E. simply because she was a child.[58]

 The decision to allow or deny a particular jury instruction remains within the discretion of the trial court.[59] The refusal to give a certain instruction is erroneous only if such a denial is *per se* prejudicial.[60] Furthermore, it is up to the jury, not the judge, to make credibility determinations;[61] and thus, trial courts must exercise caution in approving jury instructions that comment upon the credibility of witnesses.[62] In this case, Joseph would have had this Court approve an instruction that passed upon the credibility of M.E. as a witness. This Court was—and remains—unwilling to do so. The absence of such a jury instruction did not prejudice Joseph impermissibly, and defense counsel had ample opportunity to address the credibility of M.E., both on cross-examination and during closing arguments. The jury was adequately instructed on the relevant factors to be considered in evaluating the testimony of all witnesses. Accordingly, this Court will not reconsider its previous ruling in this matter.

---

[56] Def.'s Mem. in Supp. of Mot. for J. of Acquittal or New Trial at 7.

[57] *Id.* at 8-9.

[58] Gov't's Resp. to Def.'s Mot. for New Trial at 10-11.

[59] *See, e.g., Gillingham v. Stephenson*, 209 W. Va. 741, 551 S.E.2d 663, 667 (2001); *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 944 (Ind. 2001); *McAlpine v. Rhone-Poulenc AG Co.*, 2000 MT 383, 304 Mont. 31, 16 P.3d 1054, 1057 (2000).

[60] *See, e.g., Garnick v. Teton County Sch. Dist. No. 1*, 2002 WY 18, 39 P.3d 1034, 1047 (2002); *Austin v. State Farm Mut. Auto. Ins. Co.*, 261 Neb. 697, 625 N.W.2d 213, 216 (2001); *Weyerhaeuser Co. v. Thermogas Co.*, 620 N.W.2d 819, 823-24 (Iowa 2000).

[61] *See Bergland v. Martin Marietta Aluminum, Inc.*, 74 F.R.D. 635, 636 (D.V.I. 1977).

[62] *See Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 47 (Minn. 1997).

## 6. Sufficiency of the Evidence

In support of his claim that the evidence adduced at trial was insufficient to sustain a conviction, Joseph cites discrepancies between M.E.'s trial testimony and her testimony in a previous trial involving her father, as well as the differences between her trial testimony and statements made to police officers and others.[63] Joseph argues that M.E. never identified him as the man who improperly touched her, and appears to implicate his own son as the possible abuser.[64] The government responds that M.E. did indeed identify Joseph as the man who touched her improperly, and that there was sufficient evidence for the jury to find the requisite criminal intent from his actions.[65]

The test for sufficiency of the evidence is whether, when viewed in the light most favorable to the government, a rational trier of fact would have found substantial evidence to convict.[66] "[A]n appellant challenging the sufficiency of the evidence bears the heavy burden of showing a failure of the prosecution to establish the elements of the claim."[67] First-degree sexual contact is defined as follows: "A person who engages in sexual contact with a person not the perpetrator's spouse ... when the other person is under thirteen years of age ... is guilty of unlawful sexual contact in the first degree."[68]

■ At trial, the Court gave the following instruction to the jury:

To prove the defendant guilty of Unlawful Sexual Contact in the First Degree, the government must prove beyond a reasonable doubt, each of the following elements:

First: That Defendant Felix Joseph intentionally engaged in sexual contact with M.E. by touching her vagina;

Second: That M.E. was not his spouse;

Third: That M.E. was under thirteen (13) years of age; and

---

[63] Def.'s Mem. in Supp. of Mot. for J. of Acquittal or New Trial at 9.

[64] *Id.* at 9-10.

[65] Gov't's Resp. to Def.'s Mot. for New Trial at 11.

[66] *Gov't v. Charles*, 33 V.I. 361, 378, 72 F.3d 401 (3d Cir. 1995).

[67] *Morris*, 42 V.I. at 138, 191 F.R.D. at 85.

[68] 14 V.I.C. § 1708(2).

Fourth: That such act was committed to arouse or gratify the sexual desires of the defendant or of another person.[69]

In her testimony, M.E. testified that, at the time of her encounter with Joseph, she was under thirteen years of age and that she was not married to Joseph.[70] M.E. also identified Joseph as the man who climbed into bed with her and Joseph's daughter, placed his hand in her underwear, and touched her vagina moving "left and right,"[71] which can be construed as an attempt to elicit sexual gratification. Taken in a light most favorable to the government, the evidence presented by the government clearly satisfied the elements of first-degree sexual contact.

On cross-examination, defense counsel at length recounted various discrepancies between M.E.'s trial testimony and her previous statements to other witnesses and in other proceedings.[72] The jury, therefore, had adequate opportunity to consider M.E.'s apparent contradictions and weigh her credibility as a witness. Finally, this Court also instructed the jury on the difference between circumstantial and direct evidence, and that the law makes no distinction between the two in terms of probative value.[73] Thus, viewed in the light most favorable to the government, it is clear that a rational trier of fact—in this case, the jury—would have found sufficient evidence to convict Joseph. Accordingly, Joseph's claim to the contrary must be rejected.

## CONCLUSION

Because (1) the government's closing argument contained no improper references to Joseph's failure to testify; (2) Joseph fails to demonstrate how the outcome of his trial would have been different had he been in possession of *Brady* material; (3) statements of prior sexual contacts were admissible as statements made to a physician consulted for treatment or for diagnosis; (4) the Court did not abuse its discretion in declining to strike for cause two venirepersons; (5) the Court did not abuse its discretion in rejecting a requested jury instruction with respect

---

[69] *See* Jury Charge at 13.

[70] *See* tr. excerpt at 18.

[71] *See id.* at 29-30.

[72] *See id.* at 47-49, 58-66.

[73] *See* Jury Charge at 5-6.

to the credibility of child witnesses; and (6) taking the evidence in the light most favorable to the government, a rational trier of fact could have found sufficient evidence upon which to return a verdict of guilty, Joseph's motion for a judgment of acquittal or new trial must be denied. With respect to the applicability of the Federal Rules of Evidence to criminal proceedings in the Territorial Court, this Court reaffirms the validity of the Federal Rules to the extent that they are not inconsistent with the Uniform Rules of Evidence, as adopted and codified by the Legislature of the Virgin Islands.