**SINCLAIR PHILLIPS, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2007-037

Supreme Court of the Virgin Islands

March 12, 2009

THOMAS K. ALKON, ESQ., St. Croix, USVI, *Attorney for Appellant*.

CORNELIUS WILLIAMS, ESQ., Assistant Attorney General, St. Croix, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(March 12, 2009)

PER CURIAM. Appellant Sinclair Phillips[1] ("Phillips" or "Appellant"), a/k/a Ragga or Shabb, asserts that his conviction should be overturned as the result of numerous trial court errors and his case remanded for a new trial. For the reasons which follow, the conviction will be affirmed.

---

[1] This case is captioned "Sinclair Phillips" but in a September 4, 2007, letter to this Court Appellant states "My name is Sinclair Philip" while other filings refer to him as "Sinclair Phillip."

# I. BACKGROUND

On June 19, 2005, at about 3:30 a.m., Paulious Stoute ("Stoute"), a deaf mute, suddenly awoke to find a male intruder touching his pockets. The two men struggled. The intruder then rifled through Stoute's belongings before fleeing Stoute's apartment.

The same morning of the incident, James Charles, a Virgin Islands police officer, interviewed Stoute through non-verbal communication such as pointing and gesturing and asking leading questions about the incident. Using this method, Stoute described the intruder as dressed in a black shirt with white pants and white shoes, and wearing his hair in braids or dreadlocks. Stoute allegedly uttered "AK" and "Rah Rah," which Officer Charles interpreted as "Ragga," and pointed to where the intruder lived.

On July 12, 2005, Virgin Islands Police Officer Leon Cruz, Jr., accompanied by a sign language interpreter, presented Stoute with a photo array of six photographs, arranged with the benefit of Stoute's description of the intruder to Officer Charles. Stoute identified the photograph of Phillips from the photo array as the intruder. Subsequently, the People of the Virgin Islands ("the People" or "Appellee") filed a two-count information against Phillips that charged him with violating title 14, section 443 of the Virgin Islands Code, burglary in the second degree, and title 14, section 297(2), assault in the third degree.[2]

At a three day jury trial, Stoute testified with the assistance of a sign language interpreter. This interpreter was not certified, but worked with deaf children professionally and had completed coursework toward certification. The trial transcript shows that Stoute had difficulty testifying, with his answers to the questions presented on topic but generally not responsive. Stoute was asked no less than seven times to identify the intruder in the courtroom before he attempted to identify Phillips. Stoute repeatedly answered questions of whether the intruder was in the courtroom by describing the intruder as he appeared on the night of the incident and his interaction with the intruder on that night. The jury found Phillips guilty on October 5, 2006.

Phillips filed a motion for a new trial on November 27, 2006, based on newly discovered evidence consisting of a written recantation by Stoute

---

[2] The charge of assault in the third degree was dismissed at trial.

of his identification of Phillips. On February 20, 2007, after a hearing on the motion for a new trial where Stoute disavowed the recantation and claimed that he did not understand the documents he was asked to sign, the trial court denied Phillips's motion, finding that the recantation was not credible. Of note, the mother of Phillips's children had been instrumental in securing the recantation.

The trial court, by judgment dated March 15, 2007, sentenced Phillips to ten years incarceration. This appeal was timely filed on March 20, 2007.

## II. DISCUSSION

This Court has jurisdiction over timely appeals from final judgments of the Superior Court. V.I. CODE ANN. tit. 4 § 32(a). Generally, the standard of review for this court in examining the trial court's application of law is plenary while findings of fact are reviewed under the clearly erroneous standard. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007).

In this appeal, Appellant argues that the trial court abused its discretion when it: (1) denied his motion to disqualify the sign language interpreter; (2) permitted impermissible, suggestive repeated questioning relative to Stoute's identification of Phillips; (3) denied a jury instruction on law enforcement witnesses; (4) allowed repeated violations of the rules of evidence, depriving Phillips of a fair trial; (5) denied a new trial; and (6) allowed testimony from a pre-sentence report by a probation officer. We will address each purported error in turn.

### (1) The Sign Language Interpreter was Qualified.

At trial, Appellant sought removal of the sign language interpreter because of disjunctive communication — based on Stoute's non-responsive answers — to questions asked through the sign language interpreter and because the sign language interpreter was not certified. The trial court denied the request.

A trial court judge's decision to allow an individual to act as a sign language interpreter is subject to an abuse of discretion standard of review. *See Kaelin v. State*, 410 So. 2d 1355, 1357 (Fla. Dist. Ct. App. 1982). In this jurisdiction, a judge may appoint a *"qualified* person" to act as an interpreter when he or she deems the services of an interpreter as

264

necessary. 4 V.I.C. § 323 (emphasis added). Certification is not a prerequisite to qualification as an interpreter. *See United States v. Sandoval*, 347 F.3d 627, 632 (7th Cir. 2003) (holding that use of uncertified interpreter is not grounds to overturn conviction when statute authorizes appointment of "qualified" interpreters). Thus, the trial court appropriately determined that certification is not a prerequisite to be a qualified courtroom interpreter. Furthermore, title 5, section 831 of the Virgin Islands Code — a provision of the Uniform Rules of Evidence ("URE") adopted by the Legislature — states that "[a]n interpreter is subject to all the provisions of [the URE] relating to witnesses."[3] The URE requires that there be evidence that a witness "has personal knowledge . . . or experience, training or education if such be required" to testify "on a relevant or material matter," 5 V.I.C. § 833, but does not explicitly require that a court treat an interpreter as an expert witness.

■ When selecting a sign language interpreter, the "communication skill of the person needing assistance must be matched with the level of communication skill or competency of the interpreter or 'go-between,' " a process that requires that a court make a "preliminary inquiry. . . into the nature of a . . . witness['s] . . . physical and/or mental disability and that person's method and level of communication skills, and into the respective skills of the interpreter." *People v. Rodriguez*, 145 Misc. 2d 105, 546 N.Y.S.2d 769, 771 (N.Y. Sup. Ct. 1989) (citing *People v. McGee*, 1 Denio 19 (N.Y. 1845)); *see also State v. Van Pham*, 234 Kan. 649, 675 P.2d 848, 859 (1984) ("[T]he trial court must make a preliminary determination [that] the interpreter is able readily to communicate with the person . . . and is able accurately to repeat and translate the statement of said person."). To summarize, "the trial court must be satisfied the interpreter will be a ready and accurate medium between the court and the witness." *Id*. In determining if an interpreter is qualified, the trial court should inquire to determine the interpreter's education, training, general experience, court interpretation experience, opportunity to communicate with the witness, and if there are any biases. *Cruz Angeles v. State*, 751 N.E.2d 790, 795 (Ind. Ct. App. 2001); *see also United States v. Addonizio*, 451 F.2d 49, 68 (3d Cir. 1971) (affirming use of witness's wife as an interpreter for her husband, who could not speak above a loud

---

[3] The Federal Rules of Evidence do not apply to criminal proceedings in the Superior Court when they are in conflict with the URE. *See* discussion *infra* Part II.4.i.

mumble, because wife possessed "ability to understand his words almost without hesitation" and trial court examined "her ability to translate accurately and any possible motives she might have to distort her husband's testimony.").

■ We give the trial court, which is in direct contact with the witnesses, parties, and the interpreters, a wide discretion in reviewing whether the use of the interpreter made the trial fundamentally unfair. *United States v. Bell*, 367 F.3d 452, 464 (5th Cir. 2004) (citations omitted). Here the record reflects that the interpreter obtained educational training both at Suffolk Community College's Interpreter Training Program and at the University of the Virgin Islands' ("UVI") Interpreter Training Program, and is a candidate for certification in sign language. The interpreter started signing in 1990, works professionally with deaf children at the Alfredo Andrews School on St. Croix, has six to seven years interpretation experience, has twice interpreted for the Family Court judge in the Superior Court, Division of St. Croix, and has taught American Sign Language at UVI for three to four years. The interpreter testified that she spoke with Stoute prior to the trial and that she was satisfied that she understood Stoute and that he understood her. Under these circumstances, the trial court did not err in finding that the interpreter is a qualified sign language interpreter. *Id.*

■ ■ In addressing the disjunctive communication, the interpreter explained at a side bar conference that "many times the deaf ha[ve] a [more] var[ied] sense of time than we do and . . . maybe [Stoute] didn't say everything that he wanted to say about the first question and so [with] each additional question he is going back to the first." (Trial Tr. vol. II, 9, Oct. 3, 2006.) Although the interpreter was not certified as an expert witness on the psychology of deaf people, the trial court accepted her explanation without objection from Appellant. It is well established that when a criminal defendant fails to object to an issue at trial, an appellate court will limit its review to plain error. *Sanchez v. Gov't of the Virgin Islands*, 34 V.I. 105, 921 F. Supp. 297, 300 (D.V.I. App. Div. 1996). "Plain error is defined as those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings.' " *Id.* (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S. Ct. 391, 392, 80 L. Ed. 555 (1936)). We find that the trial court did not commit plain error in accepting the explanation for the disjunctive answers, and did not abuse its discretion when it concluded that the interpreter was qualified.

## (2) Repeated Questioning of Stoute In The In-Court Identification Not Error

Appellant argues that Stoute's in-court identification of Appellant after labored questioning violated his right to a fair trial. The decision to allow in-court identification is reviewed for abuse of discretion. *United States v. Wise*, 515 F.3d 207, 215 (3d Cir. 2008). Discretion is abused only when the in-court identification is so " 'unnecessarily suggestive and conducive to irreparable misidentification' as to amount to a denial of due process of law." *United States v. Williams*, 436 F.2d 1166, 1168 (9th Cir. 1971) (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968)); *see United States v. Clausen*, 328 F.3d 708, 713, 60 Fed. Appx. 402 (3d Cir. 2003) (citing *United States v. Mathis*, 264 F.3d 321, 330 (3d Cir. 2001)).

The trial transcript reveals at least seven[4] attempts by the People to have Stoute identify the intruder in the courtroom. Phillips's concern that

---

[4] Attempt 1: Q: Do you see that man in court today?
 A: When I saw the man in my home we kind of struggled. He jumped out the front door and went down the steps and around the building.
 Attempt 2: Q: Do you see that man who went through your pockets in court today?
 A: Yeah. The black man with locks or braids, I see him.
 Attempt 3: Q: Would you point to him and tell me what he is wearing?
 A: That night he had on black shirt, white pants.
 Attempt 4: Q: Do you see him in court today?
 A: It was dark that night.
 Attempt 5: Q: Paul, do you see the man who went through your pockets on June 19th in this room right now?
 A: Yes.
 Q: Okay. Would you please point to him and tell me what type of shirt he is wearing?
 A: Yes, I see him. He had on a white shirt, blue pants, his shoes, the color of his socks, His shoes were white.
 Q: What color is his shirt today?
 A: Black shirt, white pants, white shoes, I saw that. We struggled in the apartment and then he ran. I could see him outside because the light as he jumped down the steps and went around the building. He saw also — also ran past an old woman who was sitting in the wheelchair.
 Attempt 6: Q: Just point to him if you see him.
 A: That night I saw him directly. He had braids or locks. I looked directly in his face.

each time the People asked Stoute to identify the intruder suggested to the witness that the previous answer was incorrect is misguided. This is not a situation where a witness was unable to make an identification or identified someone other than the defendant and was asked again to identify the defendant. Stoute's first six responses to the question asking him to identify the intruder in the courtroom were nonresponsive. Prior to the seventh attempt at an in-court identification, the trial court, at a side bar conference, warned the People that it would only allow one more in-court identification attempt. Stoute identified the defendant in response to the prosecutor's final allowed question.

█ This Court must determine if the identification was reliable, as it was based on labored questioning, to determine if the repeated questioning violated Phillips's Fifth Amendment rights. We look to the totality of the circumstances and consider (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and confrontation. *United States v. Brownlee*, 454 F.3d 131, 139 (3d Cir. 2006) (citing *Neil v. Biggers*, 409 U.S. 188, 199, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972)).

Here, Stoute's nonresponsive ramblings focused on who and what he saw on June 19, 2005, rather than the question presented as to whether he saw that person in the courtroom. Stoute's ramblings nevertheless have value as they apprised the jury that, while struggling with the intruder, he was in close proximity to the intruder, saw him directly in the eyes, looked directly at his face, and that light from the outside hallway enabled him to see the man. Stoute repeatedly stated that the intruder wore a black shirt, white pants and white shoes, and wore his hair in braids or locks.

█ Recognizing the difficulties in communicating with the deaf, the trial court did not abuse its discretion when it permitted Stoute to continue testifying even though his answers were generally not responsive. *State v.*

---

Attempt 7: Q: Mr. Stoute, I want you to stand up and look around the courtroom. And if you see the person who went through your pockets on June 19th in Genip Gardens, if you see that person here now point to him.

A: Yes, I see the man. There he is (indicating.)

(Trial Tr. vol. II, 4-5, 7-8, 10-11.)

*Galloway*, 304 N.C. 485, 284 S.E.2d 509, 514 (1981) (observing that confusion is "inevitable" when sign language interpretation is necessary and that "[a]ny confusion arising from the use of sign language to communicate with a deaf . . . witness goes to the weight, and not the admissibility, of the evidence."). When Stoute made his first responsive attempt at an in-court identification, he pointed to Phillips. The repeated questioning of Stoute was to get a responsive answer, not to get a specific answer or an attempt to correct a misidentification. Therefore, the trial court did not abuse its discretion in allowing the repeated questioning, nor did such repeated questioning deprive Phillips of his right to a fair trial.

## (3) Law Enforcement Witness Jury Instruction Not Warranted

Appellant argues that the trial court abused its discretion when it rejected his request to include his proposed jury instruction number 14,[5] pertaining to law enforcement witnesses, in the court's instructions to the jury.

■ The standard of review of a trial court's refusal to give a particular jury instruction is for abuse of discretion. *United States v. Khorozian*, 333 F.3d 498, 507-08 (3d Cir. 2003). "In determining whether the [trial] court abused its discretion, [this] Court evaluates whether the proffered instruction was legally correct, whether or not it was substantially covered by other instructions, and whether its omission prejudiced the defendant." *United States v. Pitt*, 193 F.3d 751, 755-6 (3d Cir. 1999) (citations omitted). This Court will not overturn a conviction "for refusal to give a requested charge unless that [requested] instruction is legally correct, represents a theory of defense with basis in the record that would lead to

---

[5] Proposed Jury instruction number 14 provided:

You have heard the testimony of a law enforcement official. The fact that a witness may be employed by the local government as a law enforcement official does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness. At the same time, it is quite legitimate for defense counsel to try to attack the credibility of a law enforcement witness on the grounds that his or her testimony may be colored by a personal or professional interest in the outcome of the case. It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witness and to give to that testimony whatever weight, if any, you find it deserves.

(J.A. at 17) (citing *United States v. Bethancourt*, 65 F.3d 1074, 1080 n.3 (3d Cir. 1995)); 3d Cir. Crim. J.I. 4.18 (Sept. 2006).

acquittal, and the theory is not effectively presented elsewhere in the charge." *United States v. Stewart*, 433 F.3d 273, 310 (2d Cir. 2006) (internal citations and quotations omitted). Furthermore, this Court "will not find reversible error unless a charge either failed to inform the jury adequately of the law or misled the jury as to the correct legal rule." *Id.*; *Pitt*, 193 F.2d at 755-56. There is no error when a court denies a jury instruction on the weight to give to the testimony of law enforcement officers but instead instructs the jury on its role as fact-finder in which it is to determine for itself what weight and credibility to give to the testimony of each witness. *Austin v. State*, 784 So. 2d 186, 193 (Miss. 2001).

The proposed jury instruction, which is almost identical to Third Circuit Court of Appeals Model Criminal Jury Instruction 4.18, gives the standard for evaluating police officer testimony and explains that the defendant has the right to aggressively question the officer. The instruction on the right to aggressively question is of particular importance in this case because Police Officer Charles used personal knowledge of Phillips's habits and claimed experience with a deaf family member in his identification of Phillips from the "Rah Rah" sounds and description of Stoute, connecting Phillips to this case.

■ Phillips's proposed instruction No. 14 was appropriately tailored to the circumstances presented at trial and is a legally correct statement of the law.[6] It is also relevant to the facts of the case. *See* 3d Cir. Crim. J.I. 4.18 (Sept. 2006); 1 Hon. Leonard B. Sand, John S. Sieffert, Walter P. Loughlin & Steven A. Reiss, Modern Federal Jury Instructions ¶ 7-16 (2003). The trial court could have properly given the requested instruction No. 14 in this case. The trial court, however, rejected the proposed instruction, stating that the court's own "instructions[7] appropriately and

---

[6] Notwithstanding that standard jury instructions may reflect legally correct statements of the law, courts should always strive to tailor jury instructions to the facts and circumstances presented at trial rather than rely on model instructions that contain general or stock language. *Sharma v. State*, 118 Nev. 648, 56 P.3d 868, 874 (Nev. 2002); *State v. Sexton*, 160 N.J. 93, 733 A.2d 1125, 1132 (N.J. 1999).

[7] The jury instructions provided by the trial court include, in relevant part:

It is for you also to determine the weight and degree of credibility you will assign to the testimony of each witness. Again, you should use common knowledge and your own experiences in your own lives in regard to matters about which a witness testified. As finders of fact, in deciding the weight to be given to the testimony of any witness you

completely covered the law and burden of proof," the jury was given the information in *voir dire*, and there was "no need to recall any specific attention to law enforcement witnesses in this case or any case." (Trial Tr. vol. III, 38, Oct. 4, 2006.)

The issue in the instant appeal is similar to that in *United States v. Wright*, 542 F.2d 975 (7th Cir. 1976), *cert. denied*, 429 U.S. 1073, 97 S. Ct. 810, 50 L. Ed. 2d 790 (1977), *overruled on other grounds by United States v. Hollinger*, 553 F.2d 535 (7th Cir. 1977), where the defendant argued that the trial court erred when it refused to give a specific jury instruction regarding testimony of law enforcement witnesses. In that case, the Seventh Circuit affirmed the trial court judge's denial of the defendant's request for a jury instruction, holding "that no additional weight should be given to the testimony of law enforcement officers because of that status" because "the jury was otherwise adequately instructed in weighing the testimony of witnesses including law enforcement officers." *Id.* at 989. *See also Mahorney v. Wallman*, 917 F.2d 469, 473 n. 3 (10th Cir. 1990) (observing that "while the prosecution may not attempt to bolster the credibility of its law enforcement witnesses by emphasizing their status as government officers . . . the defendant is not entitled to specific advisory instructions."); *cf. United States v. Victoria-*

---

may disregard all or a part of it. That is what we mean by weight and degree of credibility.

In deciding what the facts are you must consider all the evidence. In doing so you must decide what testimony to believe and what testimony not to believe. You may disbelieve all or part of any witness' testimony. In making that decision you take into account a number of factors and these are the factors you should consider: Was the witness able to see, hear or know the things about which the witness testified? How well was the witness able to recall and describe these things?

How well was the witness — or what was the manner of the witness' — what was the witness' manner while testifying and his demeanor? How you reacted to him or her. Did the witnesses have an intention or an interest in the outcome of the case? Did the witness have any bias or prejudice concerning any part of any matter involved in the case? How responsible was the witness' testimony in light of all the evidence in the case? And finally, was the witness' testimony contradicted by what that witness had said or done at another time or by the testimony of other witnesses or by other evidence such as the exhibits?

In deciding whether or not to believe a witness keep in mind that people sometimes forget things. You need to consider, therefore, whether a contradiction is an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact on the case or with only a small detail.

(Trial Tr. vol. III, 77-79).

*Peguero*, 920 F.2d 77, 85 (1st Cir. 1990) (holding that instructions at beginning and end of trial that "government agents are entitled to no more credibility than any other witness" was "sufficient to counter any harm caused by the judge's omission of the requested voir dire inquiries.").

██ ██ While the trial court could have given proposed instruction No. 14, as the instruction was more comprehensive and specific to the facts of the case than the general instruction, the instruction given to the jury covered the intent and weight and credibility elements focused on in the rejected proposed instruction. The instruction given was sufficiently comprehensive, and Appellant offered no evidence of insufficiency other than his summary statement that *voir dire* was three days before deliberation. Accordingly, the trial court did not abuse its discretion as the instructions given charged the jury to weigh the evidence and not single out testimony of the law enforcement witnesses or the testimony of any other witnesses, including the victim. *See United States v. Sotelo-Murillo*, 887 F.2d 176, 182 (9th Cir. 1989); *State v. Smith*, 130 N.M. 117, 19 P.3d 254, 263 (2001); *Hicks v. United States*, 658 A.2d 200, 202 (D.C. 1995) ("In the absence of some unusual circumstance necessitating a special instruction, a general credibility instruction is ordinarily sufficient.") (citing *Coleman v. United States*, 379 A.2d 951, 955 (D.C. 1977)).

## (4) Evidence Violations

### i. Officer Charles's Hearsay Testimony Was Harmless

Appellant argues that 90-95% of Officer Charles's testimony was inadmissible hearsay concerning the victim's purported statements identifying Appellant as the perpetrator, thereby leaving the jury with a strong impression that Phillips was the burglar. Only in a few limited instances did Stoute's testimony cover what he told the police when he described and identified Phillips.

While we review whether hearsay evidence should be excluded on grounds of prejudice under an abuse of discretion standard, we exercise plenary review in determining if a hearsay exception applies. *United States v. Donley*, 878 F.2d 735, 737-38 (3d Cir. 1989).

Phillips argues that the trial court erred when it permitted Officer Charles to testify as to the identification of Phillips from "Ragga" and other sounds made to him by Stoute, as Stoute did not testify as to those facts when he testified earlier in the case. Phillips relies on the hearsay

provisions of the Federal Rules of Evidence as requiring the exclusion of such hearsay evidence. (Appellant's Supp. Br. 6.) Superior Court Rule 7 states that "[t]he practice and procedure in the [Superior] Court shall be governed by the Rules of the [Superior] Court and, to the extent not inconsistent therewith, by . . . the Federal Rules of Evidence." However, the Legislature of the Virgin Islands has adopted virtually all of the 1953 version of the URE, codified as 5 V.I.C. §§ 771-956, which defines hearsay and purportedly governs the admission of hearsay evidence in Virgin Islands courts. *See* 5 V.I.C. §§ 931-935. The URE, as adopted by the Legislature and which have not been repealed, define hearsay differently than the Federal Rules.[8] Accordingly, before considering whether the trial court should have excluded Officer Charles's testimony, this Court must determine whether the hearsay provisions of the Federal Rules of Evidence or the URE apply to this matter.

■ Unfortunately, Virgin Islands courts have not spoken with one voice as to whether the Federal Rules of Evidence or URE apply to criminal trials in the Superior Court. *Compare Gov't v. Greenidge*, 41 V.I. 200, 208 n. 5 (D.V.I. App. Div. 1998) ("The substantive rules of evidence enacted by the local legislature govern the trial of cases in the local courts of the Virgin Islands, and take precedence over the federal rules of evidence.") *and Gov't v. Joseph*, 45 V.I. 15, 24 (V.I. Super. Ct. 2002) (holding that Virgin Islands local courts are not mandated to apply the Federal Rules of Evidence) *with Gov't v. Sampson*, 42 V.I. 247, 261 n. 8, 94 F. Supp. 2d 639, 648 (D.V.I. App. Div. 2000) ("[T]he Uniform Rules of Evidence . . . do not apply in criminal actions") *and Enfield Green Homeowners Ass'n v. Francis*, 46 V.I. 332, 337, 340 F. Supp. 2d 590 n. 4 (D.V.I. App. Div. 2004) (stating that Uniform Rules of Evidence apply to civil cases in the Superior Court while Federal Rules of Evidence apply to criminal cases). *See also Gov't of the V.I. v. Dyches*, 11 V.I. 459, 507 F.2d 106, 108 (3d Cir. 1975) ("A comment in the Virgin Islands Code at the beginning of the Chapter in which Section 932 is found acknowledges the inapplicability of the Code's rules of evidence to criminal actions"); *Gov't of the V.I. v. Pondt*, 8 V.I. 492, 456 F.2d 679, 681

---

[8] The Uniform Rules of Evidence, drafted by the National Conference of Commissioners on Uniform State Laws, were last revised in 2005 and now resemble the Federal Rules of Evidence in many respects. However, the Legislature has not updated the Uniform Rules of Evidence to account for these changes.

(3d Cir. 1972) ("We hold, therefore, that in criminal proceedings within the Virgin Islands, the admissibility of extrajudicial statements of a witness is not governed by § 932 of the Virgin Islands Code . . . .") We adopt the holdings of the *Greenidge* and *Joseph* courts, and find that the Superior Court may not apply the Federal Rules of Evidence in criminal trials to the exclusion of the URE.

■■■ As the *Joseph* court notes, the *Sampson* court and other courts that held that the Uniform Rules of Evidence do not apply to criminal trials "relied exclusively on the editorial commentary to the Uniform Rules that appear in the Virgin Islands Code," which referred to former Federal Rule of Criminal Procedure 54,[9] a rule that "directs all Article III courts and congressionally-created courts in United States territories, including the District Court of the Virgin Islands," to "use the Federal Rules of Criminal Procedure in their criminal proceedings." *Joseph*, 45 V.I. at 24 (citing former FED. R. CRIM. P. 54). Because Federal Rule of Criminal Procedure 26 "mandates that courts using the Federal Rules of Criminal Procedure are obligated to use the Federal Rules of Evidence as well," the commentary to the Uniform Rules "concludes that the Uniform Rules cannot apply in criminal matters in the Virgin Islands." *Id.* However, as the *Joseph* court further explains, though Rule 54 "directly alludes to the District Court of the Virgin Islands, it does not mention the [Superior] Court of the Virgin Islands or any other local court." *Id.* Thus, while "the District Court of the Virgin Islands must rely upon the Federal Rules to resolve its evidentiary quandaries, no such compulsion prevents the [Superior] Court of the Virgin Islands from relying upon the evidentiary code that was adopted by the Legislature." *Id.* at 24-25.

Furthermore, "[w]hen originally made, the editor's comment that the Uniform Rules do not apply to criminal actions in the Virgin Islands was technically correct as, at that time, all criminal cases were tried in the District Court." *Id.* at 25 (citing *Carty v. Beech Aircraft Corp.*, 679 F.2d 1051, 1055 (3d Cir. 1982)). The District Court's exclusive jurisdiction over criminal cases arising under either federal or local law lasted until 1984, when Congress, through an amendment to the Revised Organic Act of 1954 ("ROA"), bestowed concurrent jurisdiction to the Superior Court — then known as the Territorial Court — over criminal offenses arising

---

[9] The 2002 amendments to the Federal Rules of Criminal Procedure transferred and incorporated the former Rule 54 into Rule 1.

out of violations of local law. Revised Organic Act of 1954, § 22(c), 48 U.S.C. § 1612 ("The District Court of the Virgin Islands shall have concurrent jurisdiction with the courts of the Virgin Islands established by local law over those offenses against the criminal laws of the Virgin Islands . . . ."). Likewise, when the Third Circuit decided *Dyches* and *Pondt* in 1975 and 1972 respectively, Virgin Islands local courts had not yet obtained jurisdiction to hear felony criminal matters. Accordingly, neither the introductory comment to the URE found in the Virgin Islands Code, FED R. CRIM. P. 54, nor Third Circuit precedent precludes application of the URE to criminal trials in the Superior Court.[10]

 Under section 21C of the ROA, Congress granted both the Legislature and local courts the power to promulgate procedural rules. Rules of evidence are generally considered procedural, not substantive. *See Carota v. Johns Manville Corp.*, 893 F.2d 448, 450 (1st Cir. 1990); *State v. Buonafede*, 168 Ariz. 444, 814 P.2d 1381, 1384 (1991); *Matter of Reed's Estate*, 672 P.2d 829, 834 (Wyo. 1983); *Musgrove v. State*, 82 S.W.3d 34, 39 (Tex. App. 2002). Thus, the ROA confers *both* the Legislature of the Virgin Islands and the Superior Court the power to promulgate procedural rules of evidence for use in Superior Court proceedings.[11] The clear intent of Superior Court Rule 7 is for locally promulgated rules to govern in the Superior Court, regardless of whether adopted by the Legislature or the Superior Court. Accordingly, the URE, although enacted by the Legislature, constitute "Rules of the [Superior] Court" for purposes of Superior Court Rule 7. We will therefore apply the URE's hearsay rules to this case and not the Federal Rules of Evidence hearsay provisions.[12] *See* 5 V.I.C. § 772 (stating that the URE "shall apply

---

[10] We note that the URE appear in subtitle 1 of title 5, which is titled "Civil Procedure," and that section 1(a) states that "[t]his subtitle applies to the suits of a *civil* nature whether cognizable as cases at law or in equity . . . ." (emphasis added). However, section 772 of chapter 67 of title 5, which is located in the portion of subtitle 1 codifying the URE, states that "this chapter shall apply to *every proceeding*, conducted by or under the supervision of a court, in which evidence is produced." (emphasis added).

[11] Notably, the URE codify substantive rights in addition to procedural rules. *See, e.g.,* 5 V.I.C. §§ 851-66 (codifying privileges).

[12] This Court is aware that Virgin Islands trial courts have routinely applied the Federal Rules of Evidence rather than the URE codified in the Virgin Islands Code. However, members of the bar are put on notice that, until such a time as the legislature sees fit to amend or

to every proceeding, conducted by or under the supervision of a court, in which evidence is produced.").[13]

 Title 5, section 932 of the Virgin Islands Code defines hearsay and exceptions, in part, as:

> Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:
>
> (1) Previous statements of persons present and subject to cross-examination. A statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness;

5 V.I.C. § 932(1).[14] This hearsay exception permits hearsay testimony of an out-of-court statement of a person who testifies at trial because that person can be subjected to the rigors of cross-examination as to those statements. *See Martin v. State*, 272 Ark. 376, 614 S.W.2d 512, 514-15 (1981). Since Stoute testified at trial, and was available at the trial, Officer Charles's testimony would be admissible under 5 V.I.C. § 932(1).[15]

---

repeal the statute, this Court, when reviewing civil or criminal appeals, shall apply the URE if the Uniform Rules differ from the Federal Rules.

[13] Because Superior Court Rule 7 and the URE adopted by the Legislature are not in conflict, it is unnecessary for this Court to determine whether a procedural rule promulgated by the Superior Court has priority over a contrary procedural rule enacted by the Legislature. *Compare Gieffels v. State*, 552 P.2d 661, 667 (Alaska 1976) (holding that procedural court rule takes precedence over procedural statute) with *V.I. Coalition of Citizens with Disabilities, Inc. v. Gov't*, 47 V.I. 315, 325 (V.I. Super. Ct. 2006) (holding that, when a court rule conflicts with a statute, "the specific statute governs over the procedural court rule.").

[14] This rule is based on former Rule 63 of the Uniform Rules of Evidence. 5 V.I.C. § 932 Notes, References, and Annotations.

[15] The result, however, would be the same even if Rule 801 of the Federal Rules of Evidence applied to this matter. Rule 801 allows an investigating officer to explain the circumstances that led him to identify the defendant, for such testimony is not being offered into evidence to prove the truth of the matter asserted. *United States v. Figaro*, 126 Fed. Appx. 75, 77 (3d Cir. 2005).

Although Appellant makes a sweeping accusation of hearsay violations, he only points to one actual hearsay violation under Rule 801, where Officer Charles testified that Stoute said "Ragga" in identifying the perpetrator. Appellant objected to the testimony on the grounds that Stoute never testified that he told Officer Charles a name or other sound. In fact, Stoute was never asked during his testimony if he told Officer Charles a name or other sound.

## ii. Photo Array Testimony Was Not a Fundamental Error

Appellant complains that asking Officer Cruz if Stoute selected a photo from the six-picture photo array and allowing the answer is hearsay since Stoute was never asked during his testimony which picture he chose from the photo array. The same standard of review and legal precepts apply in this matter as discussed in the immediately preceding discussion of Officer Charles' hearsay testimony. At trial, Officer Cruz testified that Stoute pointed to photo number three in the six picture photo array shown, and that number three was a photo of Phillips. When presented the photo array during his testimony and asked "who showed you that?" Stoute answered "Number three?" (Trial Tr. vol. II, 17.) Stoute eventually testified that a policeman showed him the photo array. Although, Stoute was never directly asked while on the witness stand to identify the intruder from the photo array, he gratuitously made reference to photo number three, which was a picture of Phillips.

 Appellant did not object to Officer Cruz's testimony at trial. A hearsay violation is waived if not raised at trial, unless it is a fundamental error. *State v. Wood*, 180 Ariz. 53, 881 P.2d 1158, 1170 (1994) (citations

---

Although Stoute was never released as a witness and therefore remained available to testify, Officer Charles's testimony that Stoute made "Ragga" sounds constitutes inadmissible hearsay pursuant to Rule 801.

Because this hearsay testimony is credited to the People's case, we would undertake a harmless error inquiry using the totality of the circumstances test to determine whether the hearsay violation provides grounds for a new trial. *See United States v. Velasquez*, 304 F.3d 237, 240 (3d Cir. 2002). Harmless error is "[a]ny error, defect, irregularity, or variance that does not affect substantial rights," and thus "must be disregarded." FED. R. CRIM. P. 52(a). "[T]he presence of corroborating evidence more appropriately indicates that any error in admitting the statement might be harmless." *Idaho v. Wright*, 497 U.S. 805, 823, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990). The complaining party cannot be prejudiced by the introduction of challenged hearsay evidence when the evidence is merely cumulative of admissible evidence on the same point. *United States v. Rooks*, 16 Fed. Appx. 224, 249-50 (4th Cir. 2001).

Here, Stoute testified that the perpetrator was male, slim, wore locks or braids, and wore a black shirt, white pants, and white shoes. Stoute never testified that he told Officer Charles that "Ragga" was the person in his apartment. Thus, the statement is not cumulative. However, the statement is corroborating evidence in that Stoute identified Phillips as the intruder in his apartment in a photo lineup and then in court. When Officer Charles and Officer Cruz testified at trial, Appellant fully explored the unlikelihood of Stoute, a deaf-mute, saying "Ragga." Accordingly, even if the trial court impermissibly allowed hearsay testimony under Rule 801, the error was harmless due to the corroborating evidence presented. *People v. Crimmins*, 36 N.Y.2d 230, 326 N.E.2d 787, 794-95, 367 N.Y.S.2d 213 (N.Y. 1975).

omitted); *see also Hornin v. Montgomery Ward & Co.*, 120 F.2d 500, 504 (3d Cir. 1941) (holding that an objection to a hearsay violation is waived if not raised at trial for "[t]he defendant is not entitled to another opportunity to retry its case by objecting in an appellate court to evidence not objected to below."). A fundamental, or plain, error is one "that affects substantial rights." FED. R. CRIM. P. 52(b). "One of the main considerations in deciding if substantial prejudice exists because of the introduction of hearsay material is the strength of the Government's case independent of the hearsay." *United States v. Watkins*, 369 F.2d 170, 172 (7th Cir. 1966). In this case, Officer Cruz's testimony was not the only evidence the People introduced at trial as proof of Phillips's guilt, and his testimony, even if used by the jury for its improper purpose, would not be "virtually dispositive of the case" and lead to a wrongful conviction. *United States v. Brown*, 160 U.S. App. D.C. 190, 490 F.2d 758, 764 (D.C. Cir. 1973). Notably, Stoute identified Phillips as his assailant in court. Accordingly, the lower court did not commit reversible error in allowing the identification testimony of Officer Cruz.

### iii. Criminal Record

Officer Cruz testified at trial that "I look[ed] up [Phillips's] name in the B file, the criminal records of Sinclair Phillip. He had a record. I took his latest picture." (Trial Tr. vol. II, 93). Appellant objected and moved to strike. The trial court immediately sustained the objection but failed to strike the answer. Appellant did not thereafter call this omission to the trial court's attention. Appellant now argues error because the trial did not strike the answer and instruct the jury to disregard the answer.

█ "To indiscriminately admit proof of criminal activity beyond that specifically charged may compel a defendant to meet accusations without notice and may effectively negate the due process presumption of innocence which our system of justice accords to every accused." *Fox v. State*, 497 N.E.2d 221, 224 (Ind. 1986). "Because of the tremendous impact which such evidence can have on the outcome of a criminal trial, the erroneous admission of a criminal record supposedly relating to an accused will generally be deemed prejudicial." *Com. v. King*, 455 Pa. 363, 316 A.2d 878, 881 (Pa. 1974). But, in order to determine prejudice, we must conduct a harmless error analysis. *See United States v. Vitillo*, 490 F.3d 314, 329 (3d Cir. 2007). In determining if the error was harmless we look at factors such as whether the statement was voluntary, *State v.*

*Donaldson*, 238 LA. 265, 115 So. 2d 345, 346 (1959), the amount of evidence presented, *Hall v. State*, 314 Ark. 402, 862 S.W.2d 268, 270 (1993), the materiality of the statement on the verdict, *State v. Smith*, 285 So. 2d 240, 246 (La. 1973), and the court's reaction to the statement, *United States v. Rines*, 453 F.2d 878, 878 (3d Cir. 1971). *See also* A.W. Gans, Annotation, *Effect of voluntary statements damaging to accused, not proper subject of testimony, uttered by testifying police or peace officer*, 8 A.L.R.2D 1013, §3[a] (originally published 1949, Westlaw 2008 update) (summarizing the factors courts consider to determine if improper voluntary statement by law enforcement officer is harmless). The error is harmless if, in reviewing the entire trial record, the disclosure of a prior criminal record "could not have had any appreciable effect on the action of the jury and did not affect any substantial right of the accused." *United States v. Woodring*, 446 F.2d 733, 737 (10th Cir. 1971); *see also United States v. Hines*, 470 F.2d 225, 229 (3d Cir. 1972) (finding no error committed because "it is at most speculative" that inference of defendant's criminal record "could have had any appreciable effect on the verdict of the jury."); *Lacy v. Gabriel*, 732 F.2d 7, 14 (1st Cir. 1984) (holding that improper revelation of additional criminal history information to the jury was cumulative since the jury was aware of the criminal history through other testimony and "the new information did not cast the evidence of . . . prior crimes properly before the jury in a different light.").

██ Here, Officer Cruz gratuitously disclosed the criminal record to explain why the police had a photograph of Phillips in response to questions by the prosecutor and the trial judge. Such a reason is not an exception to the general rule disallowing evidence of a defendant's prior criminal record. However, the Appellant, albeit after Officer Cruz's testimony, testified to the substance of his criminal history — reckless endangerment and a separate domestic violence conviction on direct examination, and third degree assault on cross-examination. Phillips does not argue that Officer Cruz's testimony induced him to testify or that he would not have otherwise testified. By the end of the trial, Officer Cruz's testimony about the Appellant's criminal record was cumulative. The trial court's error in failing to strike the comment about Phillips's criminal record and failing to give a curative instruction is harmless.

■■■ ■■■ ■■

## (5) The Trial Court Did Not Err In Denying A New Trial

The trial court denied Phillips's motion for a new trial, which was predicated on Stoute's post trial signing of three letters recanting his identification of Phillips as the perpetrator and reporting that Officer Charles told him it was "Ragga" and showed him a picture of Phillips on the morning of the incident.

■■■ A trial court may grant a defendant a new trial if required in the interest of justice. SUPER. CT. R. 135. "The standard of review on a motion for a new trial is abuse of discretion unless the court's denial of the motion is based on application of a legal precept, in which case our review is plenary." *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007) (quoting *Honeywell, Inc. v. American Standards Testing Bureau, Inc.*, 851 F.2d 652, 655 (3d Cir. 1988)). A trial court

> may grant a new trial on the basis of 'newly discovered evidence' if five requirements are met: (a) the evidence must be in fact, newly discovered, *i.e.*, discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal. Although the decision to grant or deny a motion for a new trial lies within the discretion of the district court, the movant has a 'heavy burden' of proving each of these requirements.

*United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006) (interpreting Rule 33 of the Federal Rules of Criminal Procedure) (internal quotation marks and citation omitted). Courts justifiably look upon after-discovered evidence or recantations with skepticism and suspicion and do not generally grant new trials based on such grounds. *United States v. Meyers*, 484 F.2d 113, 116 (3d Cir. 1973).

At the hearing on the motion for a new trial, Atia James, the mother of Appellant's three children, testified that Anita Gonzales gave her the October 11, 2006, letter. Ms. James claims that on questioning, Stoute verified the authenticity of the letter, writing yes to the question "[d]id you sign this paper?" (Trial Tr. on Def.'s Mot. for New Trial vol. I, 13, Dec. 5, 2006.) Ms. James then asked Stoute to sign two additional letters that

are nearly identical to the first. At the hearing, Stoute testified that he is essentially functionally illiterate, that he signed the documents because he was afraid, and that he did not understand the content of the letters. The trial court judge read the letter to Stoute. Stoute then answered yes to questions that he did not see Phillips in his apartment that night and that Officer Charles told him it was "Ragga" and showed him a picture of "Ragga." *Id.* at 77-78. This testimony clearly contradicts Stoute's testimony at trial. But, in further questioning by the trial court during the hearing, Stoute stated that his testimony at trial was correct and that he recognized Appellant as the person who burglarized his house. *Id.* at 80.

■ The trial court opined that "[t]he trial testimony renders the written statement allegedly made by Mr. Stoute that Officer Charles showed him a photo of the Defendant on June 19, 2005 utterly beyond belief." (J.A. 13.) We agree. The trial court did not abuse its discretion in rejecting the recantation as not credible. The trial court aptly noted that the recantation is suspect and therefore unreliable because it was procured by the mother of Phillips's three children and is otherwise uncorroborated by any other witness. Stoute acknowledged that he is functionally illiterate and, most importantly, disavowed the statements in the letters and reaffirmed his trial testimony. This alleged new evidence would not produce an acquittal if presented at trial and is merely cumulative and would only serve to impeach. *See Cimera*, 459 F.3d at 458. The later-written letters are akin to newly-discovered evidence but such evidence designed to contradict earlier in-court testimony is viewed with the "utmost suspicion." *United States. v. DiPaolo*, 835 F.2d 46, 49 (2d Cir. 1987) (citations omitted). The trial court did not err in denying the motion for new trial.

## (6) Probation Officer's Testimony Did Not Violate Defendant's Constitutional Rights

Finally, Phillips contends that the trial judge abused his discretion at the hearing on the motion for a new trial when he permitted testimony by the probation officer who had interviewed both Phillips and Stoute for purposes of drafting a pre-sentencing report. Phillips argues that neither he nor his attorney were able to review and comment on the pre-sentencing report at the hearing because they had not yet received a copy, and that Phillips's constitutional right against self incrimination was

 

violated when the probation officer was purportedly permitted to testify about her interview with the defendant.

The trial judge did not abuse his discretion in allowing the testimony of the probation officer. Though Phillips claims that the trial judge "relied upon [the report] to influence his decision on the motion," (Appellant's Br. 31), the pre-sentencing report was never introduced as substantive evidence, but admitted solely for identification purposes in order to refresh the probation officer's recollection. (J.A. 469-70.) Nothing in the record indicates that the trial court ever treated the pre-sentencing report as substantive evidence.

 Furthermore — again, contrary to Phillips's claims — the probation officer never testified to statements made by Phillips. Rather, the officer only testified about her meeting with Stoute. (J.A. 470-74.) Because Phillips's statements to the probation officer were never entered into the record, his right against self-incrimination could not have been violated, and thus the trial court did not abuse its discretion when it allowed the probation officer's testimony. *Cf. Marshall v. State*, 20 So. 3d 830, 836 (Ala. Crim. App. 2008) (holding hearsay violation did not exist when document had never been admitted into evidence).

## III. CONCLUSION

The trial court did not err when it qualified the sign language interpreter. The substance of proposed jury instruction No. 14 was substantially covered by the trial court's other jury instructions. The People's repeating and rephrasing of questions relating to the in-court identification were warranted, given Stoute's communication disability. The hearsay evidence relating to the premature disclosure of Appellant's criminal record was harmless, and Officers Charles and Cruz's hearsay testimony was also harmless. The trial court properly denied the motion for a new trial because Stoute disavowed the suspect recantation and did not abuse its discretion when it made evidentiary rulings including Stoute's statements to the probation officer at the hearing on that motion. For the above reasons, Phillips's conviction is affirmed.